Leslie A. Cohen, Esq. (SBN 93698)
Leslie Cohen Law, P.C.
506 Santa Monica Blvd. Ste 200
Santa Monica, CA 90401
Telephone: 310.394.5900
Facsimile: 310.394.9280
leslie@lesliecohenlaw.com

Attorneys for 57 Market Street, LLC,
Thomas Creed, Shari Creed,
and Stephen Foreht

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

### SAN FERNANDO VALLEY DIVISION

| | |
|---|---|
| In re | |
| 57 MARKET STREET, LLC, | Case No. 1:10-bk-11114-GM |
| Alleged Debtor. | Chapter 11 |
| | **NOTICE OF MOTION AND MOTION FOR ORDER DISMISSING INVOLUNTARY PETITION PURSUANT TO 11 U.S.C. §303 AND REQUEST FOR COSTS, ATTORNEY'S FEES, AND COMPENSATORY DAMAGES; MEMORANDUM OF POINTS AND AUTHORITIES AND DECLARATION OF THOMAS S. CREED IN SUPPORT THEREOF** |
| . | Date:    March 23, 2010 <br> Time:    10:00 a.m. <br> Place:   Courtroom 303 |

**TO THE HONORABLE GERALDINE MUND, UNITED STATES BANKRUPTCY JUDGE, TO THE ALLEGED CREDITOR AND ITS COUNSEL, AND TO THE OFFICE OF THE UNITED STATES TRUSTEE:**

**PLEASE TAKE NOTICE** that on March 23,  2010 at 10:00 a.m., pursuant to the provisions of Bankruptcy Code Section 303, Federal Rules of Bankruptcy Procedure 1011, 1013, 1018 and 7005 and the Federal Rule of Civil Procedure 12(b), there will be a hearing before the Honorable Geraldine Mund, Judge for the United States Bankruptcy Court for the Central District of California in Room 342 of the San Fernando Valley Division courthouse, 21401 Burbank Boulevard, Woodland Hills, California 91367, on the 57 Market

1  Street, LLC's, the alleged debtor herein (the "Alleged Debtor"), motion for entry of an order dismissing the

2  involuntary petition filed against it. ("Motion").

3      This Motion is based on the attached Memorandum of Points and Authorities, the Declaration of

4  Thomas S. Creed (the "Creed Declaration"), all records on file with the Court, and such other evidence that

5  may be presented to the Court at the time of the hearing of this Motion.

6      **IF YOU DO NOT OPPOSE THE MOTION DESCRIBED ABOVE, YOU NEED TAKE NO**

7  **FURTHER ACTION.  HOWEVER, IF YOU OBJECT TO THE MOTION, PURSUANT TO LOCAL**

8  **BANKRUPTCY RULE 9013-1(f), OBJECTIONS MUST BE FILED WITH THE COURT NO LATER THAN**

9  **FOURTEEN (14) DAYS PRIOR TO THE HEARING ON THE MOTION.  YOU MUST FILE YOUR**

10  **OBJECTION WITH THE CLERK OF THE UNITED STATES BANKRUPTCY COURT LOCATED AT 21041**

11  **BURBANK BLVD., WOODLAND HILLS, CALIFORNIA 91367.  YOU MUST ALSO SERVE A COPY OF**

12  **YOUR OBJECTION TO THE MOTION UPON COUNSEL FOR THE MOVANT AT THE MAILING**

13  **ADDRESS INDICATED IN THE UPPER LEFT-HAND CORNER OF THE FIRST PAGE OF THIS MOTION,**

14  **AND UPON THE OFFICE OF THE UNITED STATES TRUSTEE LOCATED AT 21051 WARNER CENTER**

15  **LANE, SUITE 115, WOODLAND HILLS, CALIFORNIA 91367.  ANY FAILURE TO TIMELY FILE AND**

16  **SERVE OBJECTIONS MAY RESULT IN ANY SUCH OBJECTIONS BEING WAIVED, AND THE COURT**

17  **MAY ENTER AN ORDER GRANTING THE MOTION WITHOUT FURTHER NOTICE**.

18      **PLEASE TAKE FURTHER THAT** in support of this Motion, the Alleged Debtor represents and

19  alleges as follows:

20      1.      The Alleged Debtor is a California limited liability company that owns real property located at

21  57 Market St., Venice, California 90291 (the "Property").

22      2.      On February 1, 2010, MAM Wealth Management Realty Fund I, L.P. ("MAM"), a minority

23  member of the Alleged Debtor, filed an involuntary petition under Chapter 11 of the United States Bankruptcy

24  Code against the Alleged Debtor.

25      3.      In the involuntary petition, MAM claims to have a 3rd position deed of trust on the Property

26  Debtor securing a debt in the amount of $569,399.66.

27

28

4.      The Alleged Debtor asserts that MAM is a fully secured creditor and its alleged claim is the subject of a bona fide dispute, currently being litigated before the Los Angeles County Superior Court as case number BC427891.

5.      The filing of the involuntary petition has detrimentally affected the Alleged Debtor's ability to conduct its business, including seeking to modify its mortgages, and has caused irreparable harm to the Alleged Debtor's reputation.

6.      The Alleged Debtor asserts that filing the involuntary petition was improper and in bad faith and that this case should be dismissed by the Court pursuant to Section 303 of the Bankruptcy Code.

7.      This Motion is made and based upon (i) the representations and allegations contained herein; (ii) the attached Memorandum of Points and Authorities; (iii) the attached Declaration of Thomas S. Creed; (iv) all papers, pleadings, and other documents on file in this Chapter 11 case; and (v) all other evidence, both oral and documentary, which may be presented to the Court at or before the hearing of this Motion.

**WHEREFORE,** Alleged Debtor requests this Court enter an order:

1.      Dismissing the involuntary petition pursuant to Bankruptcy Code Section 303;

2.      Awarding the Alleged Debtor costs of defending against this involuntary petition, including reasonable attorneys' fees;

3.      Awarding the Alleged Debtor all damages proximately caused by the filing of the petition;

4.      Awarding the Alleged Debtor punitive damages against petitioners and their attorneys; and

5.      Granting the Alleged Debtor such other relief as this Court deems just and proper.

Dated: February 22, 2010                                    Leslie Cohen Law, PC

                                                            _/s/ Leslie A. Cohen_
                                                            _____
                                                            Leslie A. Cohen
                                                            Counsel for 57 Market Street, LLC, Tom Creed,
                                                            Shari Creed, and Stephen Foreht

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.**

**INTRODUCTION**

The involuntary petition at bar is the latest of MAM's reckless, "wild wild west" attempts to stall foreclosure of the Property and harass the Alleged Debtor. Even assuming the Alleged Debtor owes MAM money, this forum is inappropriate for a collection action. Therefore, the Alleged Debtor requests this Court dismiss the involuntary petition pursuant to Bankruptcy Code Section 303 and award costs and attorneys' fees, as well as compensatory and punitive damages, to the Alleged Debtor.

57 Market Street, LLC (the "Alleged Debtor"), is a California limited liability company that owns and manages a building located at 57 Market St., Venice, California, 90291 (the "Property"). This involuntary bankruptcy petition was filed by MAM Wealth Management Realty Fund I, L.P., a Delaware Limited Partnership ("MAM"), the 3rd position junior lien holder on the Property and a minority member of the Alleged Debtor, based upon an alleged claim that is subject to a bona fide dispute, and notwithstanding the existence of an adequate state court remedy. Aside from utterly failing to meet the statutory prerequisites, the petition was filed in bad faith and represents the continuation of a private dispute between members of the Alleged Debtor rather than a proper bankruptcy scenario.

This is the third time in less than ninety days that the Alleged Debtor has been forced to oppose a meritless process orchestrated by MAM. First, MAM filed a blatantly improper "voluntary" petition in clear violation of the LLC operating agreement. This petition was promptly dismissed upon motion of the LLC's management and a request for sanctions is pending.

Next, again in clear violation of the clear language of the Alleged Debtor's Operating Agreement's arbitration requirement, MAM commenced as plaintiff a pending state court action against the Alleged Debtor. Then, after failing to obtain the TRO from the state court, MAM turned to this Court with an improper involuntary Chapter 11 petition. There could not be a more blatant exercise in bad faith forum shopping than MAM's sordid history in this dispute.

MAM's bad faith is further illustrated in its constant changing of capacities as the situation suits it. MAM asserted standing as a member of the Alleged Debtor LLC in its state court action against the Alleged

1  Debtor.  Because members cannot commence an involuntary petition against an LLC, MAM has changed hats
2  and now brings this involuntary petition as an alleged creditor.

3          The Rules of Civil Procedure, along with the common law, have long frowned upon forum shopping
4  and the misuse of legal remedies. Moreover, Congress and courts have given clear signals to potential
5  petitioners of involuntary bankruptcy proceedings that strict statutory compliance and a proper motive are
6  necessary and that inappropriate filings will not be left unpunished.

7          As discussed more fully below, the Alleged Debtor is not a candidate for involuntary bankruptcy.  The
8  claim of MAM is fully secured and is subject to bona fide disputes on both legal and factual grounds.  This
9  situation is exacerbated by the fact that MAM has already put the Alleged Debtor through one meritless
10 bankruptcy.  It is clear that MAM has brought this proceeding for a bad faith purpose in seeking to avoid
11 adjudication of its claims on the merits in a pending state court action.

12                                             II.

13                               STATEMENT OF FACTS

14 A.      The Parties

15         The Alleged Debtor is a California limited liability company created to acquire and manage the
16 Property.  MAM is an investment fund operated by MAM Wealth Management LLC, or an entity affiliated with
17 MAM, a financial and wealth management group whose CEO is Alex Martinez.  MAM owns a portfolio of real
18 properties including its interest in the Property.  Thomas S. Creed and Shari [Sharon] Creed are limited
19 partners of MAM.

20         Thomas S. Creed and Sharon Creed are 62% members of the Alleged Debtor; Stephen Foreht is a
21 5% member, and MAM is a 33% member.  Alex Martinez is the Managing Member of MAM, Ian Mitchell and
22 Rafael Sanchez are limited partners of MAM, and were also hired by the Managing Member as 'special
23 professional consultants' with similar authority as the Managing Member.  Thomas Creed is the Alleged
24 Debtor's manager, Sharon Creed is its President, Stephen Foreht is its Secretary, and Alex Martinez is its
25 Treasurer.  A true and correct copy of the Alleged Debtor's operating agreement (the "Operating Agreement")
26 is attached to the Declaration of Thomas S. Creed (the "Creed Declaration") as Exhibit "1".

27

28

**B.     Acquisition of the Property**

        The Creeds acquired the Property on behalf of the Alleged Debtor in January 2008.  The Creeds arranged the $1.8 million financing to acquire the Property from Washington Mutual Bank, which is secured by a first priority deed of trust on the Property, as well as being personally guaranteed by the Creeds. Subsequently, the Property was transferred to a trust, the Creeds invested $77,000 cash into the Alleged Debtor as well as additional cash for leasehold improvements, and MAM invested $470,000 to be secured by a 2nd priority deed of trust signed by the Creeds and transferring title from the Creeds to the LLC.  However, MAM delayed recording their deed of trust to facilitate the Alleged Debtor obtaining further financing.

        In February 2008,  the Alleged Debtor arranged a HELOC , borrowing $250,000 from Bay Area Financial Corporation ("Bay Area") and upon recording its deed of trust, Bay Area obtained a 2nd priority deed of trust against the Property.  When MAM finally recorded its deed of trust in July 2009, MAM became the Alleged Debtor's 3rd priority secured creditor.

        Per the intentions of the members in forming the LLC,  the parties agreed that Creed Strategic Imaging ("CSI") would be the tenant, paying $8500 per month in rent.  As reflected in the Operating Agreement, the members also agreed the Creeds would design and supervise the addition of a second story to increase square footage and build a larger artist in residence property.  The Creeds managed the Alleged Debtor in good faith and designed the 2nd story, hiring an architectural firm, made leasehold improvements, paid all monies as agreed.[1]

**C.     Alleged Debtor's Dispute with MAM**

        The relationship between the Creeds and MAM deteriorated from early 2008 based on certain questionable transactions on the part of MAM that the Creeds refused to acquiesce to.  On December 14, 2009, MAM filed a lawsuit in the Superior Court of the State of California for the County of Los Angeles, case number BC427891 against Thomas Sharp Creed, Sharon Creed, and Stephen Foreht for (1) Breach of Written Contract; (2) Unjust Enrichment; (3) Intentional Misrepresentation; (4) Negligent Misrepresentation; (5) Breach of Contract -- Promissory Note; (6) Common Counts; and (7) Breach of Fiduciary Duty.  On January

---

[1] The Creeds, utilizing the expertise of Ian Mitchell, were to seek construction financing to built the second floor on the Property.  However, Mitchell was unable to provide any avenue of construction financing.

13, 2010, MAM filed a First Amended Complaint, now claiming to be suing on behalf of the Alleged Debtor, at the same time adding the Alleged Debtor and Shari Creed Strategic Imaging, LLC as defendants, and alleging new claims for (1) Removal of Managing Members; (2) Breach of Fiduciary Duty; (3) Declaratory Relief; (4) Conversion to the original claims in the Complaint.  A true and correct copy of the First Amended Complaint is attached to the Creed Declaration as Exhibit "2".  MAM also makes the spurious and unsubstantiated assertion that Shari Creed is an alter ego of Shari Creed Strategic Imaging, LLC, a proposition which the Alleged Debtor and Ms. Creed deny and reject.  MAM then applied for a Temporary Restraining Order seeking an ex parte order removing Thomas Creed as Manager of the Alleged Debtor and replacing him with Alex Martinez.  The TRO was denied.

**D.    The Alleged Debtor's Financial Difficulties**

For the past 18 months, due to the recent recession, the Alleged Debtor has been unable to make enough income to make payments to the Property's three mortgagees, Chase Bank (fka Washington Mutual Bank), Bay Area, and MAM, respectively.   As a result, Bay Area declared a note default in November 2008.  The Creeds negotiated a 6-month extension of Bay Area's loan which expired in August 2009.  Following expiration of the extension, Alleged Debtor was unable to obtain replacement financing and Bay Area commenced foreclosure on the Property and a trustee sale date was scheduled for December 11, 2009 ("Sale Date").

On December 7, 2009, four days before the Sale Date, the Creeds and Stephen Foreht received a letter from MAM calling a meeting to be held on the next day, December 8, 2009, at noon ("Meeting") ("December 7th Notice").  In the December 7th Notice, MAM states that the purpose of the meeting was to "resolve the issue on the pending foreclosure of the property located at 57 Market St."

On December 8, 2009 at 11:20AM, Stephen Foreht emailed MAM on behalf of himself, Tom and Shari Creed notifying MAM that the Meeting was not authorized because the December 7th Notice was not given ten days in advance of the meeting as required by the Beverly-Killea Act, the governing law according to the Operating Agreement.

On December 8, 2009 at 12:00PM, Ian Mitchell, Alex Martinez, and Rafael Sanchez, a partner of MAM Wealth Fund Management, LP, a related company of MAM, went forward with their Meeting.  The resolutions adopted during the Meeting included removing the Creeds from their positions and installing Alex

1   Martinez as President, and approving the filing of Chapter 11 bankruptcy.  On that same date, December 8,

2   2009, Alex Martinez filed a voluntary Chapter 11 petition on behalf of the Alleged Debtor, case number 1:09-

3   bk-26620-GM, in order to stop Bay Area's December 11, 2009 foreclosure.  Upon the Creeds' motion, this

4   case was dismissed on January 5, 2009 with sanctions pending against MAM.

5        Following dismissal of the voluntary petition, Bay Area scheduled another foreclosure sale on

6   February 1, 2010.  During the week of January 25, 2010, MAM asserted its position as equity partner in order

7   to try to obtain a TRO to take control of the Alleged Debtor.  The state court denied the TRO application.

8        Following failure of MAM to obtain a TRO in state court, MAM changed its capacity from member to

9   creditor, MAM filed the instant involuntary petition on February 1, 2010 in the apparent hope of staying Bay

10  Area's second foreclosure scheduled on that very day[2].

11                                III.

12                **PROCEDURAL GROUNDS FOR THIS MOTION**

13       FRBP Rule 1013(a) provides:

14
        The court shall determine the issues of a contested petition at the earliest practicable time
15      and forthwith enter an order for relief, dismiss the petition, or enter other appropriate order.

16  F.RB.P. 1013; see also, Matter of Bishop, Baldwin, Rewald, Dillingham & Wong, Inc., 779 F.2d 471 (9th Cir.

17  1985).  Matters relating to involuntary bankruptcy petitions are treated not as adversary proceedings, but as

18  contested matter proceedings under Bankruptcy Rule 1018.   Bankruptcy Rule 1018 provides, in relevant part:

19
        [T]he following rules in Part VII apply to all proceedings relating to a **contested involuntary**
20      **petition** . . .: Rules 7005, 7008-7010, 7015, 7016, 7024-7026, 7028-7037, 7052, 7054, 7056,
        and 7062 . . . .
21

22  F.R.B.P. 1018 (emphasis added).  Bankruptcy Rule 1018 also expressly authorizes the court to use its

23  discretion to "direct that other rules in Part VII shall also apply."   In re Western Land Bank, Inc., 116 B.R. 721

24  (Bankr. C.D. Cal. 1990).

25       Rule 1011(b) provides, in relevant part:

26

27  _____

28  [2] Moving Parties intend to file separate motion requesting the Court to uphold this Foreclosure Sale.

(b)      Defenses and objections to the [involuntary] petition shall be presented in the manner prescribed by Rule 12 ...

F.R.B.P. 1011(b).  Defenses and objections made pursuant to F.R.C.P. 12(b) are ordinarily made by motion. F.R.C.P. 12(b).  A Rule 12(b) motion has been held to be a permissible method for seeking dismissal of an involuntary case when the grounds for the dismissal are substantive defenses based upon the failure to satisfy the requirements of Bankruptcy Code § 303(a).  In re Kidwell, 158 B.R. 203, 208 (Bankr. E.D. Cal. 1993).  An objection to an involuntary petition goes to the subject matter and is properly brought pursuant to F.R.C.P. 12(b)(1).

F.R.C.P. 12(b)(1) provides that the defense of "lack of jurisdiction over the subject matter" may be made by motion.  F.R.C.P. 12(b)(1).  Alternatively, a motion to dismiss an involuntary petition can be made pursuant to F.R.C.P. 12(b)(6), for the failure of the petitioning creditors to "state a claim upon which relief can be granted."  F.R.C.P. 12(b)(6).  "Although arguably not within the motions enumerated at Rule 12(b), the defense [that an involuntary petition was not filed by the minimum number of eligible petitioning creditors] is analogous to a challenge to a plaintiff's capacity to sue, which is usually permitted to be made under Rule 12(b)(6)."  In re Kidwell, 115 B.R. at 208 citing 5A C. Wright & A. Miller, Federal Practice & Procedure § 1360 (1992).

In addition, the Advisory Committee Note to Rule 1011 provides:

The specific provisions of this Rule 1011 or 7005, however, govern the filing of an answer or motion responsive to [an involuntary] petition.

Advis. Comm. Note, F.R.B.P. 1011.  Therefore, since this Motion is being made pursuant to F.R.B.P. 1011, 1018 and 7005, as well as F.R.C.P. 12(b)(1) and 12(b)(6), the filing of this Motion extends Alleged Debtor's time to answer the Involuntary Petition.  F.R.C.P. 12(a); F.R.C.P. 1011(c).  Therefore, at the present time, Alleged Debtor is not required to file an "answer" to the Involuntary Petition.[3]

---

[3]     In re Molen Drilling Co., Inc., 68 B.R. 840 (Bankr. D. Mont. 1987) (a permissible procedure for challenging the standing of a claimant to be a petitioning creditor in an involuntary case was by a motion to dismiss the petition); In re Laclede Cab Co., 76 B.R. 687 (Bankr. E.D. Mo. 1987) (a permissible procedural approach to a contested involuntary petition is to conduct a trial regarding the contested petition).  See also, In re Schiliro, 64 B.R. 422 (Bankr. E.D. Pa. 1986) (F.R.C.P. 41(b) found to be an appropriate procedural device for dismissing an involuntary petition).

**IV.**

**THE INVOLUNTARY PETITION MUST**

**BE DISMISSED ON MULTIPLE GROUNDS**

**A.**    **MAM Has Not Met its Burden of Proof as it has Failed to Establish that the Alleged Debtor Is**

**Properly the Subject of an Involuntary Petition**

Bankruptcy Code section 303(b) provides, in relevant part:

> (b)      An involuntary case against a person is commenced by the filing with the bankruptcy court of a petition under chapter 7 or 11 of this title –
>
> (1)      by **three or more entities**, each of which is either a **holder of a claim** against such person that is **not contingent as to liability** or the **subject of a bona fide dispute** . . ..

11 U.S.C. § 303(b)(1) (emphasis added).

      The burden of proving that the alleged debtor is subject to an involuntary petition rests upon the petitioning creditors. In re Knoth, 168 B.R. 311, 312 (Bankr. D. S.C. 1994); In re Allen, Rogers & Co., Inc., 30 B.R. 27 (Bankr. S.D.N.Y. 1983). "[T]here is a strict burden upon the petitioning creditors to prove a basis for involuntary relief on the merits . . .." In re Molen Drilling Co., Inc., 68 B.R. 840, 843 (Bankr. D. Mont. 1987), citing Matter of Gill Enterprises, Inc., 15 B.R. 328, 331 (Bankr. D. N.J. 1981).

      Here, MAM has presented no evidence that (1) the alleged debtor has fewer than 12 creditors; (2) its claim is undersecured in an amount in excess of $13,475; or (3) that its claim is not the subject of a bona fide dispute. By failing to meet its burden of proof, MAM's involuntary bankruptcy petition must be dismissed.

**B.**    **As a Secured Creditor, MAM has No Standing to File the Involuntary Petition**

      Sections 303(b)(1) and (2) of the Bankruptcy Code provide that if the Alleged Debtor has fewer than 12 unsecured creditors, a single secured creditor may commence an involuntary bankruptcy case so long as the "noncontingent, undisputed claims aggregate at least $13,475 more than the value of any lien on property of the debtor securing such claims held by the holders of such claims." 11 U.S.C. §303(b)(1). In other words, a fully secured creditor has no standing to file an involuntary petition and an undersecured creditor must be undersecured by at least $13,475 to have standing to file an involuntary petition.

      Here, the Property is encumbered by a first priority deed of trust in favor of Chase Bank (fka Washington Mutual Bank) securing a debt with an approximate current balance of $1,856,000.

10

1   The Property is also encumbered by a second priority deed of trust in favor of Bay Area securing a

2   debt with an approximate current balance of $231,988 (as of Nov-2009).  MAM's First Amended Complaint

3   alleges at page 17 that the Alleged Debtor owes Bay Area $230,896.

4   MAM alleges in its involuntary petition that it has a $569,399.66 claim secured by a 3rd position deed

5   of trust on the Property.  According to the "Summary of Existing Investment IV Quarter 2009" prepared by

6   MAM, MAM states the Property has a current fair market value of $2,700,000.  A copy of the Summary of

7   Existing Investment IV Quarter 2009 is attached to the Creed Declaration as Exhibit "3."

8   Adding up the first, second, and MAM's third priority deeds of trust, the Property is encumbered by a

9   total of approximately $2,657,387.66.  Taking into account MAM's $2,700,000 valuation of the Property, MAM

10  is fully secured and has no standing to file an involuntary petition against the Alleged Debtor pursuant to 11

11  U.S.C. §303.  Accordingly, this involuntary bankruptcy petition must be dismissed.

12  **C.    MAM's Claim is the Subject of a Bona Fide Dispute**

13  As set forth above, Section 303(b)(1) of the Bankruptcy Code requires that the requisite number of

14  petitioning creditors have claims, which are not the subject of a bona fide dispute.  11 U.S.C. § 303(b)(1).

15  The necessity that a petitioner's claim not be the subject of a bona fide dispute, while not a jurisdictional

16  requirement, is an element that must be demonstrated to support an involuntary case.  In re Rubin, 769 F.2d

17  611 (9th Cir. 1985).   Here, even if MAM could establish that it had an unsecured claim, the petition must be

18  dismissed for the additional and independent reason that MAM's claim is in bona fide dispute.

19  A creditor must prove a prima facie case that its claim is not the subject of a bona fide dispute;

20  thereafter, "The burden shifts to the Debtor to present evidence of a bona fide dispute."  Bartmann v. Maverick

21  Tube Corp., 853 F.2d 1540, 1544 (10th Cir. 1988).   The Bankruptcy Appellate Panel for the Ninth Circuit (the

22  "BAP") has stated, "[c]ases dealing with definition of the nature and extent of disputed debts demonstrate that

23  examination of the grounds for dispute is necessary for a determination of the ultimate issue."  In re Rubin, 37

24  B.R. 232, 236 (9th Cir. B.A.P 1984), appeal decided, 769 F.2d 611 (9th Cir.1985).  The burden is on MAM to

25  show that its alleged claim is not the subject of a bona fide dispute.  In re Hope Communications, Inc., 59 B.R.

26  939, 943 (Bankr. W.D. La. 1986).

27  A "bona fide dispute" is defined as a conflict in which an assertion of a claim or right is made in good

28  faith, without fraud or deceit, which claim or right is met by another party's contrary allegations, made in good

1 faith, without fraud or deceit.  In re Johnston Hawks, Ltd., 49 B.R. 823 (Bankr. D. Haw. 1985); see also, In re

2 Ross, 63 B.R. 951 (Bankr. S.D.N.Y. 1986) (defining "bona fide dispute" as "honest conflict" or "good-faith

3 controversy").  Whether a petitioning creditor's claim in an involuntary bankruptcy case is the subject of a

4 "bona fide dispute" is a question of fact for the bankruptcy judge.  In re Onyx Telecommunications, Ltd., 60

5 B.R. 4902 (Bankr.  S.D.N.Y 1985).  In re Sjostedt, 57 B.R. 117 (Bankr. M.D. Fla. 1986).

6          The bankruptcy court may review the pleadings filed in a pending civil case to determine whether the

7 petitioning creditor's claim, which is the subject matter of state court litigation, is the subject of a bona fide

8 dispute under Bankruptcy Code § 303(b)(1).  In re Sjosted, 57 B.R. 117 (Bankr. M.D. Fla. 1986).  Here, as set

9 forth in the Creed Declaration, the claims of MAM are the subject of the State Court Action.  The Alleged

10 Debtor has raised factual and legal defenses in the State Court Action.  Therefore, MAM's alleged claims for

11 (1) Removal of Managing Members; (2) Breach of Fiduciary Duty; (3) Declaratory Relief; (4) Conversion to the

12 original claims in the Complaint are the subject of a bona fide dispute.  Thus the involuntary petition must be

13 dismissed.

14 **D.      The Involuntary Petition Was Filed In Bad Faith for an Improper Purpose**

15          "All bankruptcy cases have a requirement that the case be filed in "good faith."    In re Studio Five

16 Clothing Stores Inc., 192 B.R. 998, 1006-7 (Bankr. C.D. Cal. 1996), citing, 11 U.S.C. §§ 1129(a)(3),

17 1325(a)(3);  In re Metz, 820 F.2d 1495 (9th Cir. 1987), aff'g 67 B.R. 462 (9th Cir. B.A.P. 1986);  In re Can-Alta

18 Properties, 87 B.R. 89 (9th Cir. B.A.P. 1988).   When a bankruptcy court determines that a bankruptcy case

19 was not filed in "good faith," the court may dismiss that case.  In re Eisen, 14 F.3d 469 (9th Cir. 1994).

20          An involuntary petition is subject to dismissal if it is determined that the involuntary petition was filed

21 in bad faith. Basin Elec. Power Co-op v. Midwest Processing Co., 769 F.2d 483 (8th Cir. 1985), cert. denied,

22 474 U.S. 1073 (1986) ; In re Alta Title Co., 55 B.R. 33 (Bankr. D.C. Utah 1985) (a petitioning creditor who files

23 a defective involuntary petition must have done so with a reasonable belief in the propriety of the filing,

24 including a reasonable inquiry into facts, and with an "absence of an improper purpose").

25          "Whether a party acted in bad faith [in commencing an involuntary bankruptcy case] is essentially a

26 question of fact".  In re Runyon, 26 F.3d 132, 135 (9th Cir. 1994).  In determining whether an involuntary

27 petition was filed in bad faith the BAP has stated that "[b]ad faith should be measured by an 'objective test'

28 that asks 'what a reasonable person would have believed'" based on the debtor's financial situation.  In re

1  Wavelength, Inc., 61 B.R. 614, 620 (9th Cir. B.A.P. 1986).  In Wavelength, the BAP relied upon In re Grecian

2  Heights Owners Assn., 27 B.R. 172, 173-74 (Bankr. D. Or. 1982), where the bankruptcy court stated:

3
4          This court believes that bad faith should be measured by an objective test. The determination should
           be measured by what a reasonable person would have believed.   The damage to a debtor from the
5          filing of an unfounded involuntary petition is the same whether it is filed by a reasonable person acting
           in bad faith or by one who is so unreasonable that he proceeds in disregard of competent advice that
6          his proposed course of action is without merit.
           The involuntary petition at issue in this involuntary case was filed in bad faith and as a litigation tactic.

7  "The use of an involuntary case to effect a nonbankruptcy purpose is recognized as an indication of bad faith."

8  1 Bankruptcy Service, L Ed § 3A:40 (April 1999), citing Basin Power Co-op v. Midwest Processing Co., 785

9  F.2d 483 (8th Cir. 1985).  Courts have found that an involuntary petition was filed in "bad faith" based upon

10 findings that the commencement of the involuntary case was motivated by ill will, a sense of malice, or to

11 embarrass or harass the debtor.  In re R.F.P. Industries, Inc., 73 B.R. 309 (Bankr. N.D. Fla. 1987); In re

12 Laclede Cab Co., 76 B.R. 687 (Bankr. E.D. Mo. 1987).

13         Here, MAM previously filed a voluntary Chapter 11 petition in order to block a foreclosure sale of the

14 Property by the 2nd trust deed holder Bay Area.  The Alleged Debtor sought and obtained a dismissal of

15 MAM's voluntary Chapter 11 case and there is currently a hearing on Feb 23, 2010 regarding sanctions

16 against MAM.  MAM then filed the instant involuntary petition on the morning of Bay Area Financial

17 Corporation's foreclosure sale, in a second attempt to block the sale.

18         MAM's course of conduct shows it is attempting to use the bankruptcy laws for the opposite purpose

19 of which they were created.  "The bankruptcy laws are intended as a shield, not a sword."  In re Penn Central

20 Transportation Co., 458 F.Supp 1346, 1356 (E.D. Pa. 1978).  Here, the bad faith actions of MAM should be

21 punished with punitive damages, not rewarded by allowing the case to proceed.

22                                              **V.**

23                            **ALLEGED DEBTOR IS ENTITLED TO**

24                          **RECOVER ATTORNEYS' FEES AND COSTS**

25 Bankruptcy Code § 303(i)(2) provides:

26
27 (i)      **If the court dismisses a petition** under this section other than on consent of all
   Petitioning Creditors and the debtor, and if the debtor does not waive the right to judgment under this
   subsection, **the court may grant judgment** –
28        i)        against the Petitioning Creditors and in favor of the debtor for –

| | | |
|---|---|---|
| A) | | costs; or |
| B) | | a reasonable attorney's [sic] fee; or |
| **ii)** | | against any petitioner that filed the petition in **bad faith**, for – |
| A) | | any damages proximately caused by such filing; or |
| B) | | punitive damages. |

11 U.S.C § 303(i) (emphasis added).

"Although the award of attorney's [sic] fees and costs is discretionary, § 303(i) routinely contemplates the award of attorney's [sic] fees and costs to the prevailing debtor."  "In re Howard, Neilson & Rush, Inc., 2 B.R. 451 (Bankr. M.D. Tenn. 1979). Attorneys' fees and costs may be awarded under § 303(i)(1), regardless of whether the petition was filed in bad faith.  In re Advance Press & Litho, Inc., 46 B.R. 700, 703 (D. Colo.1984).  It is not necessary for the court to have found that the involuntary petition was frivolous or meritless to support an award of attorneys' fees and/or costs [under § 303(i)(1)]."  In re Johnston Hawks Ltd., 72 B.R. 361, 365 (Bankr. D. Haw. 1987), aff'd, 885 F.2d 875 (9th Cir. 1989).

An award of costs or fees to the alleged debtor who prevails on a motion to dismiss an involuntary bankruptcy case is the norm.  Kidwell, 158 B.R. at 217.

> In conjunction with relaxing the standards for filing involuntary cases under the new Bankruptcy Code, the Congress simultaneously made it expensive for Petitioning Creditors and interveners who fail in attempting to bring an involuntary case.   If an involuntary petition is dismissed other than on the consent of the debtor and all Petitioning Creditors, the Petitioning Creditors may be required to pay the debtor's costs and attorney's [sic] fees.

In re Kidwell, 158 B.R. 203, 216 (Bankr. E.D. Cal. 1993), citing 11 U.S.C. § 303(i)(1).  The Kidwell court emphasized:

> There are only two charted safe harbors from the section 303(i) remedies:  (1) dismissal with consent of the debtor and of all Petitioning Creditors and (2) waiver by the debtor of the right to judgment.  All other dismissals [of involuntary petitions] are exposed to section 303(i) remedies, including, for example, dismissal pursuant to section 305 abstention based on the interests of creditors and the debtor being better served by dismissal.

158 B.R. at 216.

As set forth above, MAM brought this involuntary bankruptcy case in bad faith and in an effort to stall foreclosure and collect on claims that are the subject of bona fide disputes.  The Creed Declaration points out the Alleged Debtor has already incurred approximately $ 23,183.40 in professional fees defending this involuntary petition and could incur up to $13,000 by the time the issues are resolved.  The Alleged Debtor should be entitled to recover all attorneys' fees and costs incurred defending this action against the petitioning creditors and their counsel.

# VI.

## THE ALLEGED DEBTOR IS ENTITLED TO

## ACTUAL AND PUNITIVE DAMAGES

The B.A.P. for the Ninth Circuit has stated:

> The legislative history of Section 303(i) indicates the use of the term  "or" is not exclusive,
> and therefore punitive damages [awarded pursuant to Section 303(i)(2)(B)], if appropriate,
> may be added to an award of costs and reasonable attorneys' fees [awarded pursuant to
> Section 303(i)(2)(A)] .

In re Wavelength, Inc., 61 B.R. 614, 619  Cir. B.A.P. 1986), citing, In re Ramsden, 17 B.R. 59, 61 (Bankr. N.D.

Ga. 1981).  Therefore, upon a finding of bad faith on the part of the petitioning creditor(s), the bankruptcy

court then may award compensatory and punitive damages, in addition to attorneys' fees and costs to the

injured alleged debtor.

Pursuant to Bankruptcy Code § 303(i)(2)(A), the court may award any damages proximately caused

by the bad faith commencement of the involuntary case.   "These damages may include such items as loss of

business during and after the pendency of the case, and so on."  H.R.Rep. No. 95-595, 95th Cong., 1st Sess.

324 (1977); S.Rep. No. 95-989, 95th Cong., 2d Sess. 34 (1978), U.S.Code Cong. & Admin.News 1978, pp.

5820, 6280.

In addition, pursuant to Bankruptcy Code § 303(i)(2)(A), the court may also award punitive damages

in favor of the Alleged Debtor and against one or more of the petitioning creditors based upon the bad faith

commencement of the involuntary case.  These punitive damages awards are typically in addition to the

attorneys' fees and costs awarded by the court pursuant to Bankruptcy Code § 303(i)(1).  See, e.g., Johnston

Hawks, 72 B.R. at 368.  "Punitive damages may be assessed even if appellants rely on counsel for all the

resulting acts exhibiting bad faith."  Wavelength, 61 B.R. at 620.  One court has stated that one of the

purposes for awarding punitive damages "is to punish the petitioning creditors for wrongdoing in filing the

petition in bad faith."  Johnston Hawks, 72 B.R. at 367.   In In re SBA Factors of Miami, Inc., 13 B.R. 99, 101

(Bankr. S.D. Fla. 1981), the court stated:

> An allegation of bankruptcy is a charge that ought not to be made lightly. It usually chills the
> alleged debtor's credit and his sources of supply.   It can scare away customers.   It leaves a
> permanent scar, even if promptly dismissed. Therefore, Congress enacted Bankruptcy Code
> Section 303(i) to mitigate the effects of an involuntary bankruptcy case upon an alleged
> debtor.

See also, Camelot, Inc. v. Hayden, 30 B.R. 409, 411 (D.C. Tenn.1983) (an award of damages under § 303(i)(2) is within the court's discretion).

MAM has already caused substantial damage to the Alleged Debtor.  The Alleged Debtor's previously solid credit rating has been damaged as a result of the involuntary petition.  For example, this involuntary petition, as well as MAM's prior dismissed voluntary petition, has adversely impacted the Alleged Debtor's ability to continue to try and modify the first mortgage. Moreover, by association, the bankruptcy case taints the Creeds and Mr. Foreht.   Additionally, the Alleged Debtor's bank account was frozen by Wells Fargo causing bounced checks that further damaged its reputation and that of the principals associated with it. Damages will continue to accrue.  MAM and their counsel must be held accountable for these damages.

### VII.

### MAM MUST POST A BOND

### DURING THE PENDENCY OF THIS PROCEEDING

Bankruptcy Code § 303(e) provides:

> After notice an a hearing, and for cause, the court may require the Petitioning Creditors under this section to file a bond to indemnify the debtor for such amounts as the court may later allow under subsection (i) of this section.

11 U.S.C. § 303(e) (emphasis added).  "The exposure to the Section 303(i) remedies can be brought home early to petitioners in an involuntary case.  [Pursuant to Bankruptcy Code § 303(e), the] court can, after notice and a hearing, require a bond to be filed to indemnify the debtor for such amounts as the court may later allow under section 303(i)."  Kidwell, 158 B.R. at 218-19, citing, 11 U.S.C. § 303(e).  The legislative history to the Bankruptcy Code § 303(e) demonstrates that Congress was clear about what § 303(e) was intended to accomplish.  As stated by the Kidwell court:

> The bonding requirement will discourage frivolous petitions as well as the more dangerous spiteful petitions, based on a desire to embarrass the debtor (who may be a competitor of a petitioning creditor) or to put the debtor out of business without good cause (an involuntary petition may put a debtor out of business even if it is without foundation and is later dismissed).

Kidwell 158 B.R. at 217, citing, H.Rep. No. 95-595, 95th Cong., 1st Sess. at 323 (1977), U.S.Code Cong. & Admin.News 1978, p. 6279; see also, S.Rep. No. 95-989, 95th Cong., 2d Sess. at 23 (1978), U.S.Code Cong. & Admin. News 1978, p. 5809 (setting forth almost identical language regarding purpose of bonding

1 | requirement.)

2 |      As demonstrated above, the Alleged Debtor's debts, if any, are the subject of bona fide disputes.  The

3 | Alleged Debtor will be able to meet the threshold test of establishing that MAM is a fully secured creditor

4 | whose claims are the subject of bona fide disputes and therefore the involuntary petition must be dismissed.

5 | Given the substantial probability that the involuntary petition will be dismissed and serious issues have been

6 | raised about the good faith of MAM, MAM should be required to post a bond pursuant to Bankruptcy Code §

7 | 303(e), in the amount of $50,000.

**VIII.**

**<u>CONCLUSION</u>**

     Based on the foregoing, the Alleged Debtor respectfully requests that this Court enter its Order

dismissing the involuntary petition, and awarding costs and punitive damages against the petitioning creditor

based on the bad faith filing of the petition.

Dated: February 22, 2010                                   Leslie Cohen Law, PC

 

 

*/s/ Leslie A. Cohen*
_____
Leslie A. Cohen
Counsel for Movants Tom Creed, Shari Creed, and
Stephen Foreht

# DECLARATION OF THOMAS S. CREED

I, Thomas S. Creed, hereby declare and state as follows:

1.      I am the Managing Member of Debtor 57 Market Street, LLC, the Alleged Debtor herein.  The facts stated herein are within my personal knowledge or information, whether acquired directly, or through my familiarity with the Debtor's books and records in my capacity as the Managing Member.

2.      57 Market Street, LLC (the "Alleged Debtor"), is a California limited liability company created to acquire and manage the Property.  MAM is an investment fund operated by MAM Wealth Management LLC, or an entity affiliated with MAM, a financial and wealth management group whose CEO is Alex Martinez. MAM owns a portfolio of real properties including its interest in the Property.  My wife Shari Creed and I are limited partners of MAM.

3.      My wife and I are 62% members of the Alleged Debtor; Stephen Foreht is a 5% member, and MAM is a 33% member.  Alex Martinez is the Managing Member of MAM, Ian Mitchell and Rafael Sanchez are limited partners of MAM, and were also hired by the Managing Member as 'special professional consultants' with similar authority as the Managing Member.  I am the Alleged Debtor's manager, Sharon Creed is its President, Stephen Foreht is its Secretary, and Alex Martinez is its Treasurer.  A true and correct copy of the Alleged Debtor's operating agreement (the "Operating Agreement") is attached hereto as Exhibit "1".

4.      My wife and I acquired the Property on behalf of the Alleged Debtor in January 2008.  We arranged the $1.8 million financing to acquire the Property from Washington Mutual Bank, which is secured by a first priority deed of trust on the Property, as well as being personally guaranteed by my wife and I. Subsequently, the Property was transferred to a trust,  My wife and I invested $77,000 cash into the Alleged Debtor as well as additional cash for leasehold improvements, and MAM invested $470,000 to be secured by a 2nd priority deed of trust signed by the Creeds and transferring title from the Creeds to the LLC.  However, MAM delayed recording their deed of trust to facilitate the Alleged Debtor obtaining further financing.

5.      In February 2008,  the Alleged Debtor arranged a HELOC , borrowing $250,000 from Bay Area Financial Corporation ("Bay Area") and upon recording its deed of trust, Bay Area obtained a 2nd priority deed of trust against the Property.  When MAM finally recorded its deed of trust in July 2009, MAM became the Alleged Debtor's 3rd priority secured creditor.

6.      Per the intentions of the members in forming the LLC, the parties agreed that Creed Strategic Imaging ("CSI") would be the tenant, paying $8500 per month in rent.  As reflected in the Operating Agreement, the members also agreed that my wife and I would design and supervise the addition of a second story to increase square footage and build a larger artist in residence property.  My wife and I managed the Alleged Debtor in good faith and designed the 2nd story, hiring an architectural firm, made leasehold improvements, paid all monies as agreed

7.      My wife and I tried utilizing the expertise of Ian Mitchell to arrange construction financing to build the second floor on the Property.  However, Mitchell failed to provide any avenue of construction financing.

8.      My relationship with MAM deteriorated from early 2008 based on certain questionable transactions on the part of MAM that my wife and I refused to acquiesce to.  On December 14, 2009, MAM filed a lawsuit in the Superior Court of the State of California for the County of Los Angeles, case number BC427891 against me, Sharon Creed, and Stephen Foreht.  On January 13, 2010, MAM filed a First Amended Complaint, now claiming to be suing on behalf of the Alleged Debtor, and adding the Alleged Debtor and Shari Creed Strategic Imaging, LLC.  A true and correct copy of the First Amended Complaint is attached to hereto as Exhibit "2".

9.      MAM then applied for a Temporary Restraining Order seeking an ex parte order removing Thomas Creed as Manager of the Alleged Debtor and replacing him with Alex Martinez.  The Application was denied.

10.     For the past 18 months, due to the recent recession, the Alleged Debtor has not been able to make enough income to make payments to the Property's three mortgagees, Bay Area, Chase Bank (fka Washington Mutual Bank), and MAM, respectively.

11.     As a result, Bay Area declared a note default in November 2008.  My wife and I negotiated a 6-month extension of Bay Area's loan.  Following expiration of the extension, Bay Area commenced foreclosure on the Property and a trustee sale date was scheduled for December 11, 2009 ("Sale Date").

12.     On December 7, 2009, four days before the Sale Date, the Creeds and Stephen Foreht received a letter from MAM calling a meeting to be held on the next day, December 8, 2009, at noon

19

("Meeting") ("December 7th Notice").  In the December 7th Notice, MAM states that the purpose of the meeting was to "resolve the issue on the pending foreclosure of the property located at 57 Market St."

13.    On December 8, 2009 at 11:20AM, Stephen Foreht emailed MAM on behalf of himself, Tom and Shari Creed notifying MAM that the Meeting was not authorized because the December 7th Notice was not given ten days in advance of the meeting as required by the Beverly-Killea Act, the governing law according to the Operating Agreement.

14.    On December 8, 2009 at 12:00PM, Ian Mitchell, Alex Martinez, and Rafael Sanchez, a partner of MAM Wealth Fund Management, LP, a related company of MAM, went forward with their Meeting. The resolutions adopted during the Meeting included removing my wife and I from our positions and installing Alex Martinez as President, and approving the filing of Chapter 11 bankruptcy.  On that same date, December 8, 2009, Alex Martinez filed a voluntary Chapter 11 petition on behalf of the Alleged Debtor, case number 1:09-bk-26620-GM, in order to stop Bay Area's December 11, 2009 foreclosure.  Upon our motion, this case was dismissed on January 5, 2009 with sanctions pending against MAM.

15.    Following dismissal of the voluntary petition, Bay Area scheduled another foreclosure sale on February 1, 2010.  During the week of January 25, 2010, MAM asserted its position as equity partner in order to try to obtain a TRO to take control of the Alleged Debtor.  The state court denied the TRO application.

16.    Following failure of MAM to obtain a TRO in state court, changing its capacity from member to creditor, MAM filed the instant involuntary petition on February 1, 2010 in the apparent hope of staying Bay Area's second foreclosure scheduled on that very day.

17.    The Property is encumbered by a first priority deed of trust in favor of Chase Bank (fka Washington Mutual Bank) securing a debt with an approximate current balance of $1,856,000.

18.    The Property is also encumbered by a second priority deed of trust in favor of Bay Area securing a debt with an approximate current balance of $231,988 (as of Nov-2009).

19.    According to the "Summary of Existing Investment IV Quarter 2009" prepared by MAM, MAM states the Property has a current fair market value of $2,700,000.  A copy of the Summary of Existing Investment IV Quarter 2009 is attached hereto as Exhibit "3."

20.    The Alleged Debtor has already incurred approximately $ 23,183.40 in professional fees defending this involuntary petition and could incur up to $13,000 more by the time the issues are resolved.

21.     MAM has already caused substantial damage to the Alleged Debtor, and damages continue to accrue.  The Alleged Debtor's previously solid credit rating has been damaged as a result of the involuntary petition.  For example, this involuntary petition, as well as MAM's prior dismissed voluntary petition has adversely impacted the Alleged Debtor's ability to continue to try and modify the first mortgage.  Moreover, by association, the bankruptcy case taints my wife and I and Mr. Foreht. I declare under penalty of perjury under the laws of California that the foregoing is true and correct.  Executed on February 22, 2010 in Venice, California.

_____/s/ Thomas Creed_____

Thomas Creed

| In re:<br><br>57 Market Street LLP<br><br>Alleged Debtor(s). | CHAPTER 11<br><br>CASE NUMBER 1:10-bk-11114-GM |
|---|---|

**NOTE:** When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I. Proposed orders do not generate an NEF because only orders that have been entered are placed on the CM/ECF docket.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
506 Santa Monica Blvd., Suite 200, Santa Monica, CA 90401

A true and correct copy of the foregoing document described **NOTICE OF MOTION AND MOTION FOR ORDER DISMISSING INVOLUNTARY PETITION PURSUANT TO 11 U.S.C. §303 AND REQUEST FOR COSTS, ATTORNEY'S FEES, AND COMPENSATORY DAMAGES; MEMORANDUM OF POINTS AND AUTHORITIES AND DECLARATION OF THOMAS S. CREED IN SUPPORT THEREOF** be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

**I.   TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On  2/22/10  I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

- Margaux Ross  margaux.ross@usdoj.gov
- United States Trustee (LA)    ustpregion16.la.ecf@usdoj.gov

☐  Service information continued on attached page

**II.   SERVED BY U.S. MAIL OR OVERNIGHT MAIL**(indicate method for each person or entity served)**:**
On   12.21.09  I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☒  Service information continued on attached page

**III.   SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **2/22/10**  I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.

☒  Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

|  2/22/10  |  J'aime Williams  |  /s/ J'aime Williams  |
|---|---|---|
| Date | Type Name | Signature |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*January 2009*                                                                                                      **F 9013-3.1**

**By Mail and Email:**
Dana Douglas
16235 Devonshire Street, No. 19
Granada Hills, CA 91344
danadouglaslaw@aol.com

**By Mail:**
MAM Wealth Management Realty Fund I LP
15456 Ventura Blvd., Suite 302
Sherman Oaks, CA 91403-3021

Ian Mitchell
3609 Seahorn Drive
Malibu, CA 90265-5643

Bay Area Financial Corp.
12400 Wilshire Blvd., Suite 230
Los Angeles, CA 90025-1055

Rafael Sanchez
15456 Ventura Blvd., Suite 302
Sherman Oaks, CA 91403-3021

**By Mail and NEF:**
United States Trustee (SV)
21051 Warner Center Lane, Suite 115
Woodland Hills, CA 91367-6550

**By Personal Delivery:**
Hon. Geraldine Mund
United States Bankruptcy Court
21041 Burbank Boulevard, Suite 342
Woodland Hills, CA 91367

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*January 2009*                                                          **F 9013-3.1**