RECORDING REQUESTED BY
WILLIAM HENRI SNYDER, ESQ.

03/20/08

20080483602

WHEN RECORDED MAIL TO
NAME  SHARI H. CREED
      THOMAS S. CREED
MAILING  516 BEIRUT AVENUE
ADDRESS
CITY, STATE  PACIFIC PALISADES, CA
ZIP CODE  90272

SPACE ABOVE THIS LINE RESERVED FOR RECORDER'S USE

# T I T L E(S)

TRUST TRANSFER DEED

# EXHIBIT "F"

RECORDING REQUESTED BY.

AND WHEN RECORDED MAIL TO:
MAM Wealth Management Real Estate Fund I
15456 Ventura Blvd. #302
Sherman Oaks, CA 91403



2

A.P.N.: 4226-007-009          Order No.:          Space Above This Line for Recorder's Use Only

# SHORT FORM DEED OF TRUST AND ASSIGNMENT OF RENTS

THIS DEED OF TRUST, made this Ninth day of January, 2008, between

TRUSTOR: Shari H. Creed and Thomas S. Creed, Husband and Wife

whose address is  516 Beirut Ave. Pacific Palisades, CA 90272, and

TRUSTEE:  Provident Title Company, a California Corporation, and

BENEFICIARY:  MAM Wealth Management Real Estate Fund I, L.P. a Delaware limited partnership

Witnesseth: That Trustor IRREVOCABLY GRANTS, TRANSFERS AND ASSIGNS to TRUSTEE IN TRUST, WITH POWER OF SALE, that property in the City of Los Angeles, Los Angeles County, State of California, described as: Lot 12 in Block "A" of Venice of America, in the City of Venice, County of Los Angeles, State of California as per map recorded in Book 6, Page(s) 126, of Maps in the Office of the County Recorder of said County, EXCEPT THEREFROM the southeasterly 5 feet thereof conveyed to the city of Ocean Park for street purposes by deed recorded in Book 5575, page 96, of deeds.

This Deed of Trust is given and accepted upon the express provision that should the property hereinbefore described, or any part hereof, be conveyed or alienated by Trustor, either voluntarily or by operation of law, without Beneficiary's written consent, then all sums secured hereby shall, at Beneficiary's option, become immediately due and payable.

TOGETHER WITH the rents, issues, and profits thereof, SUBJECT, HOWEVER, to the right, power and authority given to and conferred upon Beneficiary by paragraph 10 of the provisions incorporated by reference to collect and apply such rents, issues and profits.

FOR THE PURPOSE OF SECURING: 1 Performance of each agreement of Trustor incorporated by reference or contained herein   2. Payment of the the indebtness evidenced by one promissory note of even date herewith, and any extension or renewal thereof, in the principal sum of $570,650.00 executed by Trustor in favor of Beneficiary or order  3 Payment of such further sums as the then record owner of said property hereafter may borrow from Beneficiary, when evidenced by another note (or notes) reciting it is so secured.

TO PROTECT THE SECURITY OF THIS DEED OF TRUST, TRUSTOR AGREES: By the execution and delivery of this Deed of Trust and the note secured hereby, that provisions (1) to (14), inclusive, of the fictitious deed of trust recorded in Santa Barbara County and Sonoma County on October 18, 1961, and in all other counties on October 23, 1961, in the book and at the page of Official Records in the office of the county recorder of the county where said property is located, noted below and opposite the name of such county, viz:

| County | Book | Page | County | Book | Page | County | Book | Page | County | Book | Page | County | Book | Page |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Alameda | 435 | 684 | Imperial | 1091 | 501 | Merced | 1547 | 538 | San Benito | 271 | 383 | Siskiyou | 468 | 181 |
| Alpine | 1 | 250 | Inyo | 147 | 598 | Modoc | 184 | 851 | San Bernardino | 5567 | 61 | Solano | 1105 | 182 |
| Amador | 104 | 348 | Kern | 3427 | 60 | Mono | 52 | 429 | San Francisco | A332 | 905 | Sonoma | 1851 | 689 |
| Butte | 1145 | 1 | Kings | 792 | 833 | Monterey | 2194 | 538 | San Joaquin | 2470 | 311 | Stanislaus | 1715 | 456 |
| Calaveras | 145 | 152 | Lake | 362 | 39 | Napa | 639 | 86 | San Luis Obispo | 1191 | 12 | Sutter | 572 | 297 |
| Colusa | 296 | 617 | Lassen | 171 | 471 | Nevada | 305 | 320 | San Mateo | 4078 | 420 | Tehama | 401 | 289 |
| Contra Costa | 3978 | 47 | Los Angeles | T2055 | 899 | Orange | 5889 | 611 | Santa Barbara | 1878 | 860 | Trinity | 93 | 366 |
| Del Norte | 78 | 414 | Madera | 810 | 170 | Placer | 895 | 301 | Santa Clara | 5336 | 01 | Tulare | 2294 | 275 |
| El Dorado | 568 | 456 | Marin | 1508 | 339 | Plumas | 151 | 5 | Santa Cruz | 1431 | 494 | Tuolumne | 135 | 47 |
| Fresno | 4626572 | | Mariposa | 77 | 292 | Riverside | 3005 | 523 | Shasta | 684 | 528 | Ventura | 2062 | 386 |
| Glenn | 422 | 184 | Mendocino | 579 | 530 | Sacramento | 4331 | 62 | Sierra | 29 | 335 | Yolo | 653 | 245 |
| Humboldt | 657 | 527 | | | | San Diego | Series 2 Book 1961, Page 183887 | | | | | Yuba | 334 | 486 |

(which provisions, identical in all counties, are printed on page 3 of this document) hereby are adopted and incorporated herein and made a part hereof as fully as though set forth herein at length; that he will observe and perform said provisions; and that the references to property, obligations, and parties in said provisions shall be construed to refer to the property, obligations, and parties set forth in this Deed of Trust

In accordance with Section 2924b, Civil Code, request is hereby made that a copy of any Notice of Default and a copy of any Notice of Sale be mailed to Trustor at Trustor's address hereinbefore set forth, or if none shown, to Trustor at the property address.

PAGE 1

A.P.N., 4226-007-009

NOTICE: A COPY OF ANY NOTICE OF DEFAULT AND OF ANY NOTICE OF SALE WILL BE SENT ONLY TO THE ADDRESS CONTAINED IN THIS RECORDED REQUEST. IF YOUR ADDRESS CHANGES, A NEW REQUEST MUST BE RECORDED.

*Signature of Trustor(s)*

_____    _____
Shari H. Creed                        Thomas S Creed

Document Date:   January 14, 2008

STATE OF CALIFORNIA
COUNTY OF   Los Angeles            }SS
}

On   1-14-08            before me,   Cecily Gulihur            , a notary public in and for
said state, personally appeared   Shari H. Creed and Thomas H Creed            who proved to
me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that
he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity
upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature_____

```
          CECILY GULIHUR
          COMM #1470554
     Notary Public-California
       LOS ANGELES COUNTY
     My Comm. Exp. Feb 17, 2008
```

(Seal)

PAGE 2

Public Record

A.P.N. 4226-007-009

DO NOT RECORD

4

The following is a copy of provisions (1) to (14), inclusive, of the fictitious deed of trust, recorded in each county in California, as stated in the foregoing Deed of Trust and incorporated by reference in said Deed of Trust as being a part thereof as if set forth at length therein.

**TO PROTECT THE SECURITY OF THIS DEED OF TRUST, TRUSTOR AGREES:**

(1) To keep said property in good condition and repair, not to remove or demolish any building thereon; to complete or restore promptly and in good and workmanlike manner any building which may be constructed, damaged or destroyed thereon and to pay when due all claims for labor performed and materials furnished therefore, to comply with all laws affecting said property or requiring any alterations or improvements to be made thereon; not to commit or permit waste thereof; not to commit, suffer or permit any act upon said property in violation of law, to cultivate, irrigate, fertilize, fumigate, prune and do all other acts which from the character or use of said property may be reasonably necessary, the specific enumerations herein not excluding the general.

(2) To provide, maintain and deliver to Beneficiary fire insurance satisfactory to and with loss payable to Beneficiary. The amount collected under any fire or other insurance policy may be applied by Beneficiary upon indebtedness secured hereby and in such order as Beneficiary may determine, or at option of Beneficiary the entire amount so collected or any part thereof may be released to Trustor. Such application or release shall not cure or waive any default or notice of default hereunder or invalidate any act done pursuant to such notice.

(3) To appear in and defend any action or proceeding purporting to affect the security hereof or affect the security hereof or the rights or powers of Beneficiary or Trustee; and to pay all costs and expenses, including cost of evidence of title and attorney's fees in a reasonable sum, in any such action or proceeding in which Beneficiary or Trustee may appear, and in any suit brought by Beneficiary to foreclose this Deed.

(4) To pay; at least ten days before delinquency all taxes and assessments affecting said property, including assessments on appurtenant water stock; when due, all encumbrances, charges and liens, with interest, on said property or any part thereof, which appear to be prior or superior hereto, all costs, fees and expenses of this Trust.

Should Trustor fail to make any payment or to do any act as herein provided, then Beneficiary or Trustee, but without obligation so to do and without notice to or demand upon Trustor and without releasing Trustor from any obligation hereof, may, make or do the same in such manner and to such extent as either may deem necessary to protect the security hereof, Beneficiary or Trustee being authorized to enter upon said property for such purposes; appear in and defend any action or proceeding purporting to affect the security hereof or the rights or powers of Beneficiary or Trustee; pay, purchase, contest or compromise any incumbrance, charge or lien which in the judgement of either appears to be prior or superior hereto, and, in exercising any such powers, pay necessary expenses, employ counsel and pay his reasonable fees.

(5) To pay immediately and without demand all sums so expended by Beneficiary or Trustee, with interest from date of expenditure at the rate called for in the note secured hereby, or at the amount allowed by law at date of expenditure, whichever is greater, and to pay for any statement provided for by law in effect at the date hereof regarding the obligation secured hereby any amount demanded by the Beneficiary not to exceed the maximum allowed by law at the time when said statement is demanded.

(6) That any award of damages in connection with any condemnation for public use of or injury to said property or any part thereof is hereby assigned and shall be paid to Beneficiary who may apply or release such moneys received by him in this same manner and with the same effect as above provided for disposition of proceeds of fire or other insurance.

(7) That by accepting payment of any sum secured hereby after its due date, Beneficiary does not waive his right either to require prompt payment when due of all other sums so secured or to declare default for failure so to pay.

(8) That at any time or from time to time, without liability therefore and without notice, upon written request of Beneficiary and presentation of this Deed and said note for endorsement, and without affecting the personal liability of any person for payment of the indebtedness secured hereby, Trustee may reconvey any part of said property; consent to the making of any map or plat thereof; join in granting any easement thereon; or join in any extension agreement or any agreement subordinating the lien or charge hereof.

(9) That upon written request of Beneficiary stating that all sums secured hereby have been paid, and upon surrender of this Deed and said note to Trustee for cancellation and retention and upon payment of its fees. Trustee shall reconvey, without warranty, the property then held hereunder. The recitals in such reconveyance of any matters or facts shall be conclusive proof of the truthfulness thereof. The grantee in such reconveyance may be described as "the person or persons legally entitled thereto." Five years after issuance of such full reconveyance, Trustee may destroy said note and this Deed (unless directed in such request to retain them.)

(10) That as additional security, Trustor hereby gives to and confers upon Beneficiary the right, power and authority, during the continuance of these Trusts, to collect the rents, issues and profits of said property, reserving unto Trustor the right, prior to any default by Trustor in payment of any indebtedness secured hereby or in performance of any agreement hereunder, to collect and retain such rents, issues and profits as they become due and payable. Upon any such default, Beneficiary may at any time without notice, either in person, by agent, or by a receiver to be appointed by a court, and without regard to the adequacy of any security for the indebtedness hereby secured, enter upon and take possession of said property or any part thereof, in his own name sue for or otherwise collect such rents, issues and profits, including those past due and unpaid, and apply the same, less costs and expenses of operation and collection, including reasonable attorney's fees, upon any indebtedness secured hereby, and in such order as Beneficiary may determine. The entering upon and taking possession of said property, the collection of such rents, issues and profits and the application thereof as aforesaid, shall not cure or waive any default or notice of default hereunder or invalidate any act done pursuant to such notice.

(11) That upon default by Trustor in payment of any indebtedness secured hereby or in performance of any agreement hereunder, Beneficiary may declare all sums secured hereby immediately due and payable by delivery to Trustee of written declaration of default and demand for sale and of written notice of default and of election to cause to be sold said property, which notice Trustee shall cause to be filed for record. Beneficiary also shall deposit with Trustee this Deed, said note and all documents evidencing expenditures secured thereby.

After the lapse of such time as may then be required by law following the recordation of said notice of default, and notice of sale having been given as then required by law, Trustee, without demand on Trustor, shall sell said property at the time and place fixed by it in said notice of sale, either as a whole or in separate parcels, and in such order as it may determine, at public auction to the highest bidder for cash in lawful money of the United States, payable at time of sale. Trustee may postpone sale of all or any portion of said property by public announcement at such time and place of sale, and from time to time thereafter may postpone such sale by public announcement at the time fixed by the preceding postponement. Trustee shall deliver to such purchaser its deed conveying the property so sold, but without any covenant or warranty, express or implied. The recitals in such deed of matters or facts shall be conclusive proof of the truthfulness thereof. Any person, including Trustor, Trustee, or Beneficiary as hereinafter defined, may purchase at such sale.

After deducting all costs, fees and expenses of Trustee and of this Trust, including cost of evidence of title in connection with sale, Trustee shall apply the proceeds of sale to payment of all sums expended under the terms hereof, not then repaid, with accrued interest at the amount allowed by law in effect at the date hereof; all other sums then secured hereby; and the remainder, if any, to the person or persons legally entitled thereto.

(12) Beneficiary, or any successor in ownership of any indebtedness secured hereby, may from time to time, by instrument in writing, substitute a successor or successors to any Trustee named herein or acting hereunder, which instrument, executed by the Beneficiary and duly acknowledged and recorded in the office of the recorder of the county or counties where said property is situated, shall be conclusive proof of proper substitution of such successor Trustee or Trustees, who shall, without conveyance from the Trustee predecessor, succeed to all its title, estate, rights, powers and duties, must contain the name of the original Trustor, Trustee and Beneficiary hereunder, the book and page where this deed is recorded and the name and address of the new Trustee.

(13) That this Deed applies to, insures to the benefit of, and binds all parties hereto, their heirs, legatees, devisees, administrators, executors, successors and assigns. The term Beneficiary shall mean the owner and holder, including pledgees, of the note secured hereby, whether or not named as Beneficiary herein. In this Deed, whenever the context so required, the masculine gender includes the feminine and/or neuter, and the singular number includes the plural.

(14) That Trustee accepts this Trust when this Deed, duly executed and acknowledged, is made a public record as provided by law. Trustee is not obligated to notify any party hereto of pending sale under any other Deed of Trust or of any action or Proceeding in which Trustor, Beneficiary or Trustee shall be party unless brought by Trustor.

PAGE 3

Public Record

This page is part of your document - DO NOT DISCARD

# 20091115823



Pages:
0004

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

**07/23/09 AT 08:11AM**

| | |
|---|---|
| FEES: | 33.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 33.00 |



L E A D S H E E T



200907230030001

00000914762

002221330

**SEQ:**
**01**

DAR - Mail (Hard Copy)



THIS FORM IS NOT TO BE DUPLICATED

# EXHIBIT "G"

2

RECORDING REQUESTED BY

AND WHEN RECORDED MAIL TO:
57 Market Street LLC
15456 Ventura Blvd. #302
Sherman Oaks, CA 91403



07/23/2009

*20091116027*

_____ Space Above This Line for Recorder's Use Only _____

A.P.N.: 4226-007-009                    Order No.:

## QUITCLAIM DEED

THE UNDERSIGNED GRANTOR(s) DECLARE(s) DOCUMENTARY TRANSFER TAX NONE
[    ] computed on full value of property conveyed, or
[    ] computed on full value less value of liens or encumbrances remaining at time of sale.
[    ] unincorporated area;  [ X ] City of  Los Angeles , and

FOR A VALUABLE CONSIDERATION, Receipt of which is hereby acknowledged,
Shari H. Creed and Thomas S. Creed, wife and husband

hereby remise, release and forever quitclaim to
57 Market Street, LLC a California limited liability company

**THE GRANTORS AND THE GRANTEES IN THIS CONVEYANCE ARE COMPRISED OF THE SAME PARTIES WHO CONTINUE TO HOLD THE SAME PROPORTIONATE INTEREST IN THE PROPERTY, R & T 11923(d),**

the following described property in the City of Los Angeles, County of Los Angeles State of California;
Lot 12 in Block "A" of Venice of Venice, County of Los Angeles, State of California as per map recorded in Book 6, Page(s) 126, of Maps in the Office of the County Recorder of said County, EXCEPT THEREFROM the southeasterly 5 feet thereof conveyed to the city of Ocean Park for street purposes by deed recorded in Book 5575, page 96, of deeds.

_____          _____
Thomas S. Creed                                    Shari H. Creed

Document Date:  January 14, 2008

STATE OF CALIFORNIA  Los Angeles  )SS
COUNTY OF _____  )

On  1-14-08  before me  Cecily Gulihur , a notary public in and for said
state, personally appeared  Thomas S. Creed & Shari H. Creed , who proved to me on the basis of satisfactory evidence to
be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their
authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted,
executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____

CECILY GULIHUR
COMM. 014470564
Notary Public-California
LOS ANGELES COUNTY
My Comm. Exp. Feb 17, 2008

(Seal)

Mail Tax Statements to:   SAME AS ABOVE  or  Address Noted Below

RECORDER MEMO: This COPY has not been QUALITY ASSURED.

RECORDER MEMO: This COPY has not been QUALITY ASSURED.

**This page is part of your document - DO NOT DISCARD**



# 20091116027

**Pages:**
**0002**

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

**07/23/09 AT 08:14AM**

| | |
|---|---|
| FEES: | 13.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 13.00 |



**L E A D S H E E T**



200907230030002

00000914773

002221550

**SEQ:**
**01**

**DAR - Mail (Hard Copy)**



**THIS FORM IS NOT TO BE DUPLICATED**



RECORDER MEMO: This COPY has not been QUALITY ASSURED.

# EXHIBIT "H"

Recording requested by

When recorded mail to:

UTLS Default Services  LLC
Post Office Box 5506
3 Executive Circle
Suite 100
Irvine, CA 92616

***ENTITLED***

NOV 2 0 2009

Space above this line for recorder's use

TS # 040-0094-11                Order # 30200173                Loan # CREED

## Notice of Trustee's Sale

YOU ARE IN DEFAULT UNDER A DEED OF TRUST DATED 1/31/2008.  UNLESS YOU TAKE
ACTION TO PROTECT YOUR PROPERTY, IT MAY BE SOLD AT A PUBLIC SALE. IF YOU NEED AN
EXPLANATION OF THE NATURE OF THE PROCEEDING AGAINST YOU, YOU SHOULD CONTACT
A LAWYER.

A public auction sale to the highest bidder for cash, cashier's check drawn on a state or national bank,
check drawn by state or federal credit union, or a check drawn by a state or federal savings and loan
association or savings association, or savings bank specified in Section 5102 to the Financial code and
authorized to do business in this state, will be held by duly appointed trustee The sale will be made, but
without covenant or warranty, expressed or implied  regarding title, possession, or encumbrances  to pay
the remaining principal sum of the note(s) secured by the Deed of Trust, with interest and late charges
thereon, as provided in the note(s), advances, under the terms of the Deed of Trust, interest thereon,
fees, charges and expenses of the Trustee for the total amount (at the time of the initial publication of the
Notice of Sale) reasonably estimated to be set forth below.  The amount may be greater on the day of
sale.

| | |
|---|---|
| Trustor(s): | SHARI H. CREED AND THOMAS S. CREED WIFE AND HUSBAND AS JOINT TENANTS |
| Recorded | 2/4/2008 as Instrument No. 20080204913 in book , page  of Official Records in the office of the Recorder of Los Angeles County, California; |
| Date of Sale | 12/11/2009 at 10:30 AM |
| Place of Sale | At the front entrance to the Pomona Superior Courts Building, 350 West Mission Blvd., Pomona, CA |

Amount of unpaid balance and other charges:  $236,045.24

| | |
|---|---|
| The purported property address is | 57 MARKET STREET VENICE, CA 90291 |
| Legal Description | LOT 12 IN BLOCK "A" OF VENICE AMERICA  AS PER MAP RECORDED IN BOOK 6  PAGE 8 126 AND 127  OF MAPS, LOS ANGELES COUNTY RECORDS. |
| Assessors Parcel No | 4226-007-009 |

TS # 040-009441
Loan # CREED
Notice of Trustee's Sale

The undersigned Trustee disclaims any liability for any incorrectness of the property address or other common designation, if any, shown herein. If no street address or other common designation is shown, directions to the location of the property may be obtained by sending a written request to the beneficiary within 10 days of the date of first publication of this Notice of Sale.

If the Trustee is unable to convey title for any reason, the successful bidder's sole and exclusive remedy shall be the return of monies paid to the Trustee, and the successful bidder shall have no further recourse.

Date: 11/20/2009                          UTLS DEFAULT SERVICES, LLC

Sokun Lonh, Authorized Signer
Post Office Box 5899 6 Executive Circle
Irvine, CA 92616
(949) 885-4500

Sale Line: (714) 573-1965
Reinstatement Line: (949) 885-4500
To request reinstatement/and or payoff FAX request to: (949) 885-4496

**THIS OFFICE IS ATTEMPTING TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.**

02/08/2010 14:06 FAX 3122679387    Doc 5-2    Filed 03/05/10    Entered 03/05/10 18:10:13    Desc
Case 1:10-bk-11114-GM    Doc 5-2    Filed 03/05/10    Entered 03/05/10 18:10:13    Desc
Part 3    Page 13 of 22

☑032/039

## NOTICE OF SALE
## PURSUANT TO SECTION 2924.8 OF THE CIVIL CODE

Foreclosure process has begun on this property, which may affect your right to continue to live in this property. Twenty days or more after the date of this notice, this property may be sold at foreclosure. If you are renting this property, the new property owner may either give you a new lease or rental agreement or provide you with a 60-day eviction notice. However, other laws may prohibit an eviction in this circumstance or provide you with a longer notice before eviction. You may wish to contact a lawyer or your local legal aid or housing counseling agency to discuss any rights you may have.

## 依据民法典第2924.8章

因本房产的贷款程序已经开始。这可能会影响您在此继续居住的权利，从本通知起的二十天后。本房产可能会被出售，如果你是租房户，新的房主可能给你新的出租协议，或通知您在60天内搬家。但有些法律可能禁止在此情况下的驱逐，或可为您提供更长的搬家期限。您可以与您的律师，您当地的法律援助或房屋咨询机构讨论您的有关权利

## 매매 통고
## 민법 제 2924.8 항에 의거

이 건물에 대한 차압 절차가 시작되었으며, 그로 인해 귀하가 이 건물에서 계속해서 거주할 수 있는 권리에도 영향이 미칠 수 있습니다. 이 통고문의 날짜로부터 20일 혹은 그 후에, 이 건물은 차압 매매될 수 있습니다. 만약 귀하가 이 건물을 임차하고 있다면, 새로운 건물 소유주는 귀하와 새임대차 계약을 하거나 또는 60일 이내 퇴거하라는 통고를 할 수 있습니다. 그러나, 다른 법률들은 이런 상황에서의 퇴거를 금지하거나 또는 귀하에게 퇴거하기 전까지 연장된 기간의 통고를 하도록 할 수도 있습니다. 귀하의 권리에 대한 상담을 하기 위해 귀하는 변호사 또는 귀하가 있는 지역의 법률 구조 기관 혹은 주택 상담 기관에 연락하실 수도 있습니다.

## ANUNCIO DE VENTA
## SEGÚN LA SECCIÓN 2924.8 DEL CÓDIGO CIVIL

El proceso de ejecución de hipoteca ha comenzado en esta propiedad, lo que puede afectar su derecho de vivir en esta propiedad. La propiedad puede ser vendida en ejecución de hipoteca veinte días o más después de la fecha de este aviso. Si usted está rentando esta propiedad, el nuevo dueño de la propiedad puede darle a usted un nuevo contrato de arrendamiento o alquiler o darle un aviso de desalojo de 60-días. Sin embargo, otras leyes tal vez puedan prohibir un desalojo en esta circunstancia o proveerle a usted un aviso de desalojo de más tiempo para que desaloje la propiedad. Tal vez usted desee comunicarse con un abogado o su ayuda legal de la localidad o agencia de consejería de vivienda para hablar de cualquier derecho que usted tal vez tenga.

## PAUNAWA SA PAGBENTA
## BATAY SA SEKSYON 2924.8 NG NILAGDAANG SIBIL

Ang proseso ng pagreremata ay nagsimula na sa pag-aaring ito, na kung saan ay maaaring makaapekto sa inyong karapatan na tuluyang manirahan sa pag-aaring nabanggit. Dalawampung araw o higit pa matapos ang petsang naisagawa ang paunawang ito, ang nasabing pag-aari ay maaari nang ibenta batay sa pagremata. Kung kayo ay nangungupahan sa pag-aaring ito, ang bagong may-ari ay maaaring magbigay ng bagong kasunduan sa paghiram o pagbenta o bigyan kayo ng kasulatan na paunawa na makalipat sa loob ng 60 na araw. Gayunpaman, maaaring ipagbawal ng ibang batas ang pagpapaalis sa pagkakataong ito o maaaring bigyan kayo ng mas mahabang panahon bago ang pagpapaalis. Minumungkahi kayong makipagbigay alam sa inyong abogado o lokal na katulong pang-legal o ahensiya ng payong pabahay upang pag-usapan ang alinmang karapatan na kayo ay mayroon.

## THÔNG BÁO BÁN
## THEO ĐIỀU 2924.8 BỘ LUẬT DÂN SỰ

Việc bắt đầu tịch thu tài sản này có thể ảnh hưởng đến quyền tiếp tục sinh sống của bạn tại đây. Bắt đầu từ hai mươi ngày trở đi sau thông báo, tài sản này có thể bị tịch thu để trả nợ. Nếu bạn đang mướn nhà tại đây, chủ tài sản mới sẽ gửi cho bạn cam kết mới về việc thuê hoặc mướn hoặc có thể sẽ gửi cho bạn thông báo rời khỏi nhà trong vòng 60 ngày. Tuy nhiên, một số luật khác có thể không cho phép việc yêu cầu rời khỏi nhà trong trường hợp này mà gửi cho bạn thông báo sớm hơn trước khi yêu cầu bạn rời đi. Bạn nên liên hệ với luật sư hoặc tổ chức giúp đỡ luật địa phương hoặc cơ sở tư vấn nhà để tham khảo những quyền bạn có.

2924.8(c) - Sunsets Jan. 1, 2013




**This page is part of your document - DO NOT DISCARD**



## 20080064741

**Pages: 024**

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

**01/11/08 AT 08:00AM**

Fee: 79.00

Tax: 0.00

Other: 0.00

Total: 79.00

**Title Company**

## TITLE(S) :



L E A D     S H E E T

Assessor's Identification Number (AIN)
To be completed by Examiner OR Title Company in black ink.        Number of AIN's Shown




**THIS FORM IS NOT TO BE DUPLICATED**

*Equity*

Recording Requested By
WASHINGTON MUTUAL BANK FA

Return To
WASHINGTON MUTUAL BANK FA
2210 ENTERPRISE DR
FLORENCE, SC 29501
DOC OPS M/S FSCE 440

Prepared By:
ROBERT HURLEY

2

01/11/08

**20080064741**

LA0720486 ————— [Space Above This Line For Recording Data] —————

ZCA1
M59

# DEED OF TRUST

3016044559-057

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated  DECEMBER 28, 2007
together with all Riders to this document.
(B) "Borrower" is  SHARI H CREED AND, THOMAS S CREED WIFE AND HUSBAND AS JOINT TENANTS

Borrower's address is  57 MARKET STREET, LOS ANGELES, CA 90291
. Borrower is the trustor under this Security Instrument.

(C) "Lender" is  WASHINGTON MUTUAL BANK, FA

Lender is a  FEDERAL SAVINGS BANK
organized and existing under the laws of  THE UNITED STATES OF AMERICA

CALIFORNIA – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT      Form 3005 1/01

VMP ® –6(CA) (0207)
Page 1 of 15          Initials: *TM*
VMP MORTGAGE FORMS – (800)521-7291

3

Lender's address is 2273 N. GREEN VALLEY PARKWAY, SUITE 14, HENDERSON, NV
89014
Lender is the beneficiary under this Security Instrument
(D) "Trustee" is  CALIFORNIA RECONVEYANCE COMPANY, A CALIFORNIA CORP

(E) "Note" means the promissory note signed by Borrower and dated DECEMBER 28, 2007
The Note states that Borrower owes Lender ONE MILLION EIGHT HUNDRED SIX
THOUSAND AND 00/100
(U.S. $  1,806,000.00      ) plus interest Borrower has promised to pay this debt in regular
Periodic Payments and to pay the debt in full not later than JANUARY 01, 2038
(F) "Property" means the property that is described below under the heading "Transfer of Rights
in the Property"
(G) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late
charges due under the Note, and all sums due under this Security Instrument, plus interest.
(H) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The
following Riders are to be executed by Borrower (check box as applicable):

| [x] Adjustable Rate Rider | [ ] Condominium Rider | [ ] Second Home Rider |
| [ ] Balloon Rider | [ ] Planned Unit Development Rider | [ ] Other(s) [specify] |
| [ ] 1-4 Family Rider | [ ] Biweekly Payment Rider | |

(I) "Applicable Law" means all controlling applicable federal, state and local statutes,
regulations, ordinances and administrative rules and orders (that have the effect of law) as well as
all applicable final, non-appealable judicial opinions
(J) "Community Association Dues, Fees, and Assessments" means all dues, fees,
assessments and other charges that are imposed on Borrower or the Property by a condominium
association, homeowners association or similar organization.
(K) "Electronic Funds Transfer" means any transfer of funds, other than a transaction
originated by check, draft, or similar paper instrument, which is initiated through an electronic
terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize
a financial institution to debit or credit an account Such term includes, but is not limited to,
point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire
transfers, and automated clearinghouse transfers.
(L) "Escrow Items" means those items that are described in Section 3.
(M) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or
proceeds paid by any third party (other than insurance proceeds paid under the coverages
described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or
other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv)
misrepresentations of, or omissions as to, the value and/or condition of the Property.
(N) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or
default on, the Loan
(O) "Periodic Payment" means the regularly scheduled amount due for (i) principal and
interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.
(P) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.)
and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended
from time to time, or any additional or successor legislation or regulation that governs the same
subject matter As used in this Security Instrument, "RESPA" refers to all requirements and

*4*

restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA

**(Q)** **"Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

## TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note, and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the COUNTY of LOS ANGELES :
　　　　　　　[Type of Recording Jurisdiction]　　　　　[Name of Recording Jurisdiction]

THE LEGAL DESCRIPTION IS ATTACHED HERETO AS A SEPARATE EXHIBIT "A"
AND IS MADE A PART HEREOF.

Parcel ID Number: 4226-007-009　　　　　　which currently has the address of

57 MARKET STREET　　　　　　　　　　　　　　　　　　　　　　[Street]
LOS ANGELES　　　　　　　　　　　[City], California 90291 [Zip Code]
("Property Address"):

　　TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

　　BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

　　THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

　　UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

　　1. **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the

-6(CA) (0207)　　　　　　　Page 3 of 16　　　Initials　　　Form 3005 1/01

Note and any prepayment charges and late charges due under the Note Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender (a) cash, (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15 Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure, No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note, (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for, (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5, and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the

08 0006474 1

term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3

7

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. Property Insurance. Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services: or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance

-6(CA) (0207)                          Page 6 of 16          Initials ____          Form 3005 1/01

08 00647 41

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due

6 Occupancy. Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. Preservation, Maintenance and Protection of the Property; Inspections. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

Initials

-6(CA) (0207) Page 7 of 15 Form 3005 1/01

9

8  Borrower's Loan Application. Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence

9.  Protection of Lender's Interest in the Property and Rights Under this Security Instrument  If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to  (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court, and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding  Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off  Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument  These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10  Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect  Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance  Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law  Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

-6(CA) (0207)                    Page 8 of 15                Initials _____        Form 3005 1/01

08 006 47 41