1 | Dana M. Douglas (Bar No. 220053)
Attorney at Law
2 | 16235 Devonshire St., No. 19
Granada Hills, CA 91344
3 | Telephone: (818) 360-8295
Facsimile: (818) 360-9852
4 | danadouglaslaw@aol.com

5 | Attorney for
MAM Wealth Management Real Estate Fund 1, LP

6

7

```
                              FILED

                           MAR 1 1 2010

                       CLERK U.S. BANKRUPTCY COURT
                       CENTRAL DISTRICT OF CALIFORNIA
                       BY:              Deputy Clerk
```

8 | UNITED STATES BANKRUPTCY COURT

9 | CENTRAL DISTRICT OF CALIFORNIA

10 | SAN FERNANDO VALLEY DIVISION

11 | In re                                  )   Case No. 1:10-BK-11114-GM
                                           )
12 |    57 MARKET STREET LLC               )   Chapter 11
                                           )
13 |        Debtor.                        )   **MAM WEALTH MANAGEMENT REAL**
                                           )   **ESTATE FUND 1, LP's OPPOSITION TO**
14 |                                       )   **DEBTOR'S MOTION TO DISMISS**
                                           )   **INVOLUNTARY PETITION PURSUANT**
15 |                                       )   **TO 11 U.S.C. § 303 AND REQUEST FOR**
                                           )   **COSTS, ETC., DECLARATIONS OF**
16 |                                       )   **RAFAEL SANCHEZ AND GILMA KOCH**
                                           )   **IN SUPPORT OF OPPOSITION**
17 |                                       )
                                           )   Date: March 23, 2010
18 |                                       )   Time: 10:00 a.m.
                                           )   Ctrm: 303
19 |                                       )
                                           )

20 | TO THE HONORABLE GERALDINE MUND, UNITED STATES BANKRUPTCY

21 | JUDGE; TO TOM CREED, SHARI CREED and STEPHEN FOREHT and THEIR

22 | ATTORNEY(S) OF RECORD; TO THE OFFICE OF THE UNITED STATES TRUSTEE:

23 | MAM WEALTH MANAGEMENT REAL ESTATE FUND 1, LP ("MAM"), hereby

24 | opposes Movant(s) 57 MARKET STREET LLC ("57 LLC"), TOM CREED, SHARI CREED

25 | and STEPHEN FOREHT ("CREED," "CREEDs" and/or "CREED/FOREHT") MOTION TO

26 | DISMISS INVOLUNTARY PETITION PURSUANT TO 11 U.S.C. § 303 AND REQUEST

27

28 |                                  1          MAM Wealth Management Real Estate Fund
                                               1, LP's Opposition to Motion to Dismiss
DANA M. DOUGLAS                                Involuntary Petition
Attorney at Law

FOR COSTS, ATTORNEY'S FEES, AND COMPENSATORY DAMAGES (collectively, the "Motion") as follows:

## I. **STATEMENT OF FACTS**

MAM Wealth Management Real Estate Fund 1, LP ("MAM") filed an involuntary petition in bankruptcy as to 57 Market Street LLC ("57 LLC") under Chapter 11 of 11 U.S.C. §303 et seq. (the "Bankruptcy Code") on February 1, 2010 (the "Involuntary Petition"), so as to reorganize the debts of 57 LLC, preserve the real estate that is the primary asset of the LLC and source of the Debtor's name, namely, 57 Market Street in Venice, California 90291, on which a foreclosure sale was pending, and thereby preserve the interests of the individuals and institutions who had invested (primarily retirement funds) in 57 LLC as part of an investment portfolio (see Declaration of Ralph Sanchez attached hereto and incorporated herein by this reference).

The primary asset of the Debtor's estate is the real estate that was the subject of the foreclosure action and pending sale ("57 Market Street").  There are three loans on 57 Market Street: a first mortgage of approximately $1,800,000 through Chase Mortgage, originally Washington Mutual, guaranteed by or in CREEDs' name and on which there is no default; a home equity line of credit from Bay Area Funding of approximately $200,000, guaranteed by or in CREEDs' name and on which a notice of trustee's sale was recorded and a sale scheduled for February 1, 2010 and, currently, on which a Motion for Relief from Stay is pending in this Court (the "BAF Loan"), and a third mortgage of approximately $475,000 from MAM Wealth Management Real Estate Fund 1, LP, in the name of 57 LLC, which is also in default but on which no sale is scheduled.

A secondary asset of Debtor's estate is the rent that 57 LLC is entitled to collect from Shari Creed, and/or Mrs. Creed's very successful public relations business, Shari Creed Strategic Imaging, LLC, which agreed to pay $8,500 per month for its occupancy of the ground floor of 57 Market Street (see the Motion, page 6, lines 13-14).  While the

2

MAM Wealth Management Real Estate Fund 1, LP's Opposition to Motion to Dismiss Involuntary Petition

DANA M. DOUGLAS
Attorney at Law

1    Motion suggests 57 LLC is a victim of the "recent recession" (see the Motion, page 7,

2    lines 11-12) had CREED/FOREHT required that Mrs. Creed, or Shari Creed Strategic

3    Imaging LLC, pay the monthly rent as agreed under the terms of a lease of January 9,

4    2008, by and between 57 LLC and Shari Creed Strategic Imaging, LLC (see the Motion,

5    page 6, lines 13-14), and as CREEDs, as managing members of 57 LLC were obliged to

6    do, there would have been sufficient funds to service 57 LLC's debt load.

7         A third asset of the estate should be the unused proceeds (estimated to be

8    approximately of $135,000) of the home equity line of credit from Bay Area Funding.

9    The line of credit was obtained to renovate the first floor of 57 Market Street and add a

10    second story thereby greatly increasing the value of the property as the CREEDs have

11    acknowledged they were obliged to do (see the Motion, page 6, lines 14-18).  However,

12    after the line of credit was fully extended, CREEDs stopped working with the architect

13    on the construction project which is at a stand-still and instead, apparently, used the

14    funds to **"pimp out" their offices** at 57 Market Street and have failed and/or refused

15    to account for the full balance of the loan (see Declaration of Rafael Sanchez attached

16    hereto) except for approximately $35,000 which they have placed in an account with

17    Wells Fargo Bank.   In the absence of an accounting by CREED/FOREHT as to the

18    where the funds of the fully extended BAF Loan have gone, MAM believes there should

19    have been sufficient funds to cure the BAF Loan default.

20         On December 9, 2009, in a mistaken belief that he had the authority to do so as

21    he thought (i) he had properly noticed CREEDs of a meeting of the LLC that they

22    acknowledged but failed or refused to attend and (ii) that the 57 LLC Operating

23    Agreement actually permitted a transfer of management of the LLC to anyone other

24    than the CREEDs or their hand-picked marionette, Alex Martinez, caused 57 LLC to file

25    a voluntary petition under Chapter 11 of 11 U.S.C. § 101 et seq. (see Declaration of

26    Rafael Sanchez) which was dismissed upon CREEDs' motion in January, 2010.

27

28

MAM Wealth Management Real Estate Fund
1, LP's Opposition to Motion to Dismiss
Involuntary Petition

DANA M. DOUGLAS
Attorney at Law

1     At approximately the same time (on December 14, 2009) MAM and an affiliate

2    filed a state court action alleging, among other things, breach of contract, intentional

3    misrepresentation and unjust enrichment by and of the CREEDs. That matter is

4    currently pending in state court.  In January, 2010, in view of the imminent dismissal

5    of the voluntary petition in bankruptcy and the CREEDs' continued failure and refusal

6    to manage the LLC for its benefit and for the benefit of the other members, the

7    complaint was amended to add claims of breach of fiduciary duty and removal of the

8    managing members and the plaintiffs also sought, on an ex parte basis, injunctive relief

9    so as to immediately remove the CREEDs and repair the management of the LLC (the

10   First Amended Complaint is attached by Movants to their Motion as Exhibit 2 and it is

11   incorporated herein by this reference).  The court declined to immediately grant

12   injunctive relief without prejudice to the plaintiff and suggested they return with

13   additional facts to support granting an immediate order.

14     Notwithstanding the fact that a Chapter 11 petition in bankruptcy is a viable and

15   appropriate means of addressing the defaulted mortgages and other debts of the LLC,

16   the CREEDs persist in resisting this course just as they resist paying or collecting the

17   rent for Shari Creed Strategic Imaging LLC's occupancy of 57 Market Street (that failure

18   to collect and/or to pay rent being the cause of 57 LLC's financial difficulties and a

19   breach of fiduciary duty owed to the LLC by the CREEDs).

20     Movants contend here that (1) MAM's filing of the Involuntary Petition is actually

21   a collection action in disguise; (2) that MAM's claim is the subject of a bona fide dispute

22   that has an appropriate state court remedy; (3) converse to contention 2, that MAM's

23   state court action is somehow evidence of bad faith or an abuse of process; and (4) that

24   MAM is fully secured.  For the reasons discussed below, these claims are disingenuous

25   and should be rejected.

26

27

28

4       MAM Wealth Management Real Estate Fund
I, LP's Opposition to Motion to Dismiss
Involuntary Petition

## II.  **DISCUSSION**

A. In their Motion in the section entitled <u>Acquisition of the Property</u> Movants would have the Court believe that CREEDs have fully performed their obligations under the parties' Operating Agreement (attached to the Motion as Exhibit 1 and incorporated herein by this reference) as to the having "managed the Alleged Debtor in good faith and designed the 2nd story, hiring an architectural firm, made leasehold improvements, paid all monies as agreed" (see the Motion, page 6, lines 16-18). However, the CREEDs' defaults on all three mortgages and their failure to pay or collect rent by/from Shari Creed Strategic Imaging, LLC (the sole source of income for 57 LLC) demonstrates that this representation is overstated at best.

B. In their Motion in the section entitled <u>Alleged Debtor's Dispute with MAM</u>, Movants would have the Court believe that the state court action filed by MAM, opined by the Court in previous hearings between these parties to be the proper forum for many of MAM's grievances against CREEDs, is now somehow an abuse of process and evidence of MAM's bad faith.  In fact, it should only be a consideration as to whether the involuntary petition should be dismissed or allowed to proceed in so far as to evaluate whether the claims therein constitute a dispute as to MAM's claim for payment by 57 LLC.  Moreover, Movants' allegation that "MAM also makes the spurious and unsubstantiated assertion that Shari Creed is an alter ego of Shari Creed Strategic Imaging, LLC, a proposition which the Alleged Debtor and Ms. Creed deny and reject" (see the Motion, page 7, lines 5-7) belies their claim as to good faith management of the LLC in that they continue to fail and refuse to collect the rent from this, presumably, third party entity that should be required to either pay the rent it owes or cease its unlawful detention of property – however, CREEDs have done neither.

C. In their Motion in the section entitled <u>The Alleged Debtor's Financial Difficulties</u> Movants, would have the Court believe that the economic downturn has affected 57 LLC as if it was in the business of selling goods and commodities or, even,

5

DANA M. DOUGLAS
Attorney at Law

1 buying, renting or selling real estate. The sole business of 57 LLC, aside from the

2 obligation to make the improvements to the property that Movants have acknowledged

3 they were obliged to do (see the Motion, page 6, lines 16-18 as referenced in paragraph

4 A above), is to collect rent from Shari Creed Strategic Imaging, LLC, something CREEDs

5 have not, and cannot claim to have, done.

6 ### III. MOVANTS' ASSERTION THAT THE BANKRUPTCY MUST BE

7 ### DISMISSED

8 Movants assert that because MAM has not previously provided evidence that

9 the Involuntary Petition was appropriately filed, vis-a-vis the numerosity of creditors or

10 the non-contingent, undisputed nature of its claim, the Involuntary Petition must be

11 dismissed.

12 In fact, correspondence was sent to Movants' attorney, Leslie Cohen, advising

13 of MAM's belief that the Involuntary Petition was appropriately filed and inviting dialog

14 as to any contrary belief but no reply on this issue was ever received from her (see

15 Exhibit A, February 2, 2010 letter to Leslie Cohen attached hereto and incorporated

16 herein by this reference).

17 (1)   Number of (Unsecured) Creditors

18 Prior to filing the Involuntary Petition, WePhix Business Management

19 Technologies, Inc. ("WePhix"), an unsecured creditor of 57 LLC and the entity the

20 members of 57 LLC agreed would provide bookkeeping services for the LLC, was asked

21 to provide information as to the number of creditors of 57 LLC. WePhix' most recent

22 records provided five creditors and the balances of each account – some of which are

23 believed to be much higher now than when WePhix received the billings. The creditors

24 and balances owed are as follows:

25   Bay Area Financial Corp.                    $   234,113

26   Chase (formerly Washington Mutual)      $1,856,083

27   MAM                                          $   470,650

28                                  6          MAM Wealth Management Real Estate Fund
                                                1, LP's Opposition to Motion to Dismiss
DANA M. DOUGLAS                                 Involuntary Petition
Attorney at Law

| | | |
|---|---|---|
| 1 | Ian Mitchell | $ 125,020 |
| 2 | WePhix | $ 5,540 |
| 3 | WePhix/MAM for advanced expenses | $ 15,456 |

4  (See Declaration of Gilma Koch attached hereto and incorporated herein by this

5  reference.)  It is clearly evident that the number of creditors is fewer than 12 as required

6  by §303 of the Bankruptcy Code.

7      (2)  <u>57 LLC's Equity in 57 Market Street/MAM's Unsecured Loan</u>

8      Movants assert that the value of 57 Market Street is $2,700,000 based

9  upon a document from the first quarter of 2009 and prepared utilizing a prospective

10  value that was contingent upon CREEDs' completing construction of a second story

11  addition to the property – an addition that Movants admit has not been made (see the

12  Motion, page 6, footnote 1).

13      In today's real estate market and in the absence of the planned addition,

14  the value of 57 Market Street is not $2,700,000.  Two sources have valued the property

15  well below Movant's value of $2,700,000.  The higher value, of Bay Area Financial Corp.

16  as provided in their Motion for Relief from Stay, is $2,200,000 (see Exhibit B, #10 D

17  Attachment to Motion for Relief from Automatic Stay of Bay Area Financial Corp.

18  attached hereto and incorporated herein by this reference).   MAM asserts that the more

19  realistic value, based on a recent appraisal, is $1,875,000 as evidenced by their

20  appraiser's report (see Exhibit C, Appraisal of 57 Market Street, attached hereto and

21  incorporated herein by this reference).

22      The Motion states that the property is encumbered in the amount of

23  $2,657,387.66 (see Motion, page 11, lines 8-9).  As the third priority lien on 57 Market

24  Street with initial (undisputed) loan balance of $470,000, MAM is unsecured in an

25  amount greater than $13,475 and, therefore, has standing to file the Involuntary

26  Petition.

27      (3)  <u>**MAM's Claim Is Not the Subject of a Bona Fide Dispute**</u>

28

       7

MAM Wealth Management Real Estate Fund
1, LP's Opposition to Motion to Dismiss
Involuntary Petition

1    Movants would have the Court believe that any dispute at all will suffice to
2    disqualify a creditor's claim as the basis for filing an involuntary petition. However, as
3    stated by the Bankruptcy Appellate Panel for the Ninth Circuit ("BAP"), "case(s) dealing
4    with the definition of the **nature and extent of disputed debts** demonstrate that
5    examination of the grounds for dispute is necessary for a determination of the ultimate
6    issue." (Emphasis added.) In re Rubin, 37 B.R. 232, 236 (9th Cir.B.A.P.1984.) appeal
7    decided, 769 F.2d 611 (9th Cir.1985).

8    It is undisputed that MAM loaned the LLC $470,000 to enable it to purchase
9    57 Market Street; MAM's loan is secured by recorded deed of trust (see the Motion, page
10   6, lines 6-8). When MAM had not received payment on its note for several months, it
11   caused a notice of default to be recorded (see Exhibit D, Notice of Default, attached
12   hereto and incorporated herein by this reference). The fact that MAM did not elect to
13   proceed to a trustee's sale does not alter the validity of its claim.

14   Movant acknowledges in its Motion that the claims in the state court action
15   are "(1) Removal of Managing Members, (2) Breach of Fiduciary Duty, (3) Declaratory
16   Relief, (4) Conversion" (see the Motion, page 12, lines 10-11).   These are not collection
17   claims and their resolution will have no direct impact on payment of MAM's claim as
18   secured by the recorded trust deed. The parties clearly have numerous disputes as to
19   the management of the LLC, however, MAM's claim for payment is not the crux of the
20   state court action and what is required for a determination of a bona fide dispute is that
21   it pertain to a "disputed debt" which is not the case here. In re Rubin, supra.

22   MAM's claim is not the subject of a bona fide dispute and Movant's assertion
23   to the contrary is not accurate. The facts do not support dismissal of the Involuntary
24   Petition on the basis of a bona fide dispute.

25         (4) **The Involuntary Petition Was Not Filed for an Improper Purpose**

26

27

28

8

MAM Wealth Management Real Estate Fund
1, LP's Opposition to Motion to Dismiss
Involuntary Petition

DANA M. DOUGLAS
Attorney at Law

1    Movants assert that the Involuntary Petition was filed in bad faith and utilizes

2  the timing of its filing vis-à-vis the impending foreclosure sale of 57 Market Street by

3  Bay Area Financial to support their assertion.

4    The MAM entities include the interests of numerous individuals who have

5  invested their hard-earned retirement funds in properties such as 57 Market Street.

6  MAM has a duty to act in the interests of these investors and preserve the assets in

7  which they have invested (see Declaration of Rafael Sanchez).

8    While there is no question that the impending trustee's sale of 57 Market

9  Street determined the timing of the Involuntary Petition – there would have been little

10  reason to file the Involuntary Petition after a sale had eviscerated the interests of the

11  investors – the mere fact that the timing of the Involuntary Petition stopped a

12  foreclosure sale is not evidence of bad faith.  Indeed, according to the 8th Circuit, it is

13  "the use of an involuntary case to effect a nonbankruptcy purpose [that] is recognized

14  as an indication of bad faith." Bankruptcy Service, L Ed § 3a:40 (April 1999), citing

15  Basin Power Co-op v. Midwest Processing Co., 785 F.2d 483 (8th Cir. 1985).  Unlike

16  Bankruptcy Service and Basin Power Co-op, in this case the Involuntary Petition was

17  filed for the exact purpose for which the procedure is intended:  to protect the interests

18  of creditors and to provide a mechanism for reorganizing a party's debts so that they

19  can be paid and operations can continue.

20    Movants cite In re R.F.P. Industries, Inc. for the proposition that "courts have

21  found that an involuntary petition was filed in 'bad faith' based upon findings that the

22  commencement of the involuntary case was motivated by ill well, a sense of malice, or

23  to embarrass or harass the debtor. In re R.F.P. Industries, Inc. 73 B.R. 309 (Bankr.

24  N.D. Fla. 1987); In re Laclede Cab Co., 76 B.R. 687 (Bankr. E.D. Mo. 1987)."  Movants

25  offer the previously filed and dismissed voluntary Chapter 11 petition and their

26  continuing effort to obtain sanctions against MAM as evidence of bad faith, and go on to

27  say "the bad faith actions of MAM should be punished with punitive damages" (see the

28

9    MAM Wealth Management Real Estate Fund
1, LP's Opposition to Motion to Dismiss
Involuntary Petition

1  Motion, page 13, lines 20-21).  While Movants' continuing failure to manage 57 LLC in a
2  manner that fulfills its purpose, pays its debts and preserves its assets – and to oppose
3  steps that would enable these things to occur – are facts that could be construed as
4  evidence of bad faith on the part of Movants, MAM's intent in filing the voluntary
5  petition in December and now in filing the Involuntary Petition is simply to preserve the
6  assets of 57 LLC so that its debts can be reorganized in a manner that permits its
7  creditors to be paid and its investors a continued opportunity to realize the benefit of
8  having invested their retirements in 57 Market Street.

9        MAM filed the Involuntary Petition for an appropriate purpose and it should
10  be allowed to proceed.

11  **IV.  AS THE INVOLUNTARY PETITION SHOULD NOT BE DISMISSED, THE**
12       **ALLEGED DEBTOR IS NOT ENTITLED TO RECOVER ATTORNEY'S**
13       **FEES OR COSTS OR ACTUAL OR PUNITIVE DAMAGES**

14        As Movant has noted, Bankruptcy Code § 303(i)(1) and (2) provides that:

15        (i)  **"if the court dismisses a petition** under this section other than on
16             consent of all petitioners and the debtor, and if the debtor does not
17             waive the right to judgment under this subsection, the court **may**
18             grant judgment
19             (1) against the petitioners and in favor of the debtor for –
20                  (A) costs; or
21                  (B) a reasonable attorney's fee; or
22             (2)  against any petitioner that filed the petition in bad faith, for –
23                  (A) any damages proximately caused by such filing; or
24                  (B) punitive damages.

25  It is undisputed that the threshold for any award of attorney's fees or costs or actual or
26  punitive damages is the dismissal of the involuntary petition by the court other than on
27  the consent of all petitioning creditors and the debtor.

28                                    10        MAM Wealth Management Real Estate Fund
                                                1, LP's Opposition to Motion to Dismiss
DANA M. DOUGLAS                                 Involuntary Petition
Attorney at Law

A. ATTORNEY'S FEES WERE LARGELY UNNECESSARY AND, ACCORDINGLY, UNREASONABLE

MAM has demonstrated above that (i) it qualifies as a petitioning creditor; (ii) there are fewer than 12 potential similarly situated claimants; (iii) its claim is unsecured in excess of $13,475; (iv) its claim is neither contingent as to liability nor the subject of a bona fide dispute; and (vi) the Involuntary Petition was not filed for an improper purpose. Accordingly, the Involuntary Petition should not be dismissed and no award of attorney's fees or costs should follow.

Assuming, arguendo, this court concludes the Involuntary Petition should be dismissed, it has **discretion to "award costs OR a reasonable attorney's fee"** (emphasis added).

The first possible award to Movants would be their "costs" which, presumably, are de minimis, as they have not even taken the time to communicate them and have, instead, moved immediately to their attorney's fee of $23,183.40 as of February 22nd and estimated as an additional $13,000 by the time the issues are resolved. While these figures may be accurate, the question is: are the attorney's fees necessary and reasonable?

Movants have asserted in their argument for dismissal of the Involuntary Petition that its filing was inappropriate because there are (apparently) 12 or more creditors with like claims, that MAM's claim is fully secured and the subject of a bona fide dispute. However, on February 2nd, in transmitting a courtesy copy of the Involuntary Petition, the undersigned invited Movants' counsel to advise immediately "if such an assertion[s] will be made...with a view to limiting fees and/or unnecessary expense" (see Exhibit A, February 2, 2010 letter to Leslie Cohen). Ms. Cohen has never replied to this invitation.

Because Movants' counsel never bothered to engage in any dialog aimed at "limiting fees and/or unnecessary expense," MAM asserts that any attorney's fees after

11

DANA M. DOUGLAS
Attorney at Law

1  the date of MAM's February 2nd letter are potentially unnecessary and, accordingly,

2  unreasonable. This is particularly true in view of the Court's instructions at the

3  hearing of February 23, 2010, wherein the Court instructed the parties to attempt to

4  mediate their respective claims. Since that time MAM has made overtures to Movants'

5  counsel to initiate mediation but, to date, Movants' suggested mediators seem unlikely

6  to lead to an actual mediation occurring much less succeeding (see Exhibit E, March 2,

7  2010 letter to Leslie Cohen, attached hereto and incorporated herein by this reference).

8     As to any attorney's fees that may have been necessary, it is impossible to know

9  from the information currently available whether any of the fees billed are for work that

10  was already performed in opposing the voluntary Chapter 11 petition for which Ms.

11  Cohen's firm billed a similarly significant amount. MAM believes that even if the

12  Involuntary Petition were to be dismissed, the amount claimed as attorney's fees is not

13  reasonable and should not be awarded.

14     B. ACTUAL AND PUNITIVE DAMAGES

15     Bankruptcy Code § 303(i)(2) provides an additional threshold for any award of

16  actual or punitive damages, namely, that the involuntary petition be filed in bad faith.

17  And as with attorney's fees or costs, any award of actual or punitive damages, while

18  possibly routinely granted, is within **the discretion** of the court.

19     In addition to its argument that the Involuntary Petition should not be dismissed

20  because MAM was qualified to file it and MAM's purpose in filing the Involuntary

21  Petition was appropriate, namely, the preservation of assets for reorganization of 57 LLC

22  and repayment of creditors and potential realization by investors of their investments.

23  There were no nonbankruptcy goals to be achieved and no evidence of "ill well, a sense

24  of malice, or [an intent] to embarrass or harass the debtor." In re R.F.P. Industries, Inc.

25  73 B.R. 309 (Bankr. N.D. Fla. 1987); In re Laclede Cab Co., 76 B.R. 687 (Bankr. E.D.

26  Mo. 1987). Accordingly, no award of actual or punitive damages should follow.

27

28

MAM Wealth Management Real Estate Fund
1, LP's Opposition to Motion to Dismiss
Involuntary Petition

DANA M. DOUGLAS
Attorney at Law

1    To support its claim for punitive damages, 57 LLC claims that its "solid credit

2   rating has been damaged as a result of the involuntary petition... [that it] has adversely

3   impacted the Alleged Debtor's ability to continue to try and modify the first mortgage"

4   (see the Motion, page 16, lines 4-6). MAM is, to put it bluntly, nonplussed at this

5   assertion. At the time the Involuntary Petition was filed, the second and third

6   mortgages had filed notices of default and the second mortgage had published a second

7   scheduled trustee's sale of 57 Market Street – likely the true cause of any damage to 57

8   LLC's "solid credit rating." A petition in Chapter 11, whether voluntary or involuntary,

9   signals to creditors a borrower's intent to resolve the issues leading up to a borrower's

10   default on its mortgages and can have the effect of improving a credit rating.

11   Additionally, it is unlikely that the first mortgage was seriously entertaining a

12   modification of its loan while a trustee's sale of the property was scheduled by the

13   second mortgagee and, to the extent it was considering doing so, many of the current

14   modification programs are not disrupted by a bankruptcy – particularly when, as

15   suggested above, it signals a serious intent to resolve the borrower's credit situation.

16    Because the Involuntary Petition was appropriately filed with no evidence of bad

17   faith it should not be dismissed and, therefore, there is no basis for an award of costs,

18   attorney's fees, actual or punitive damages.

19   **V.  THERE IS NO NECESSITY OF A BOND DURING THE PENDENCY OF THE**

20       **PROCEEDING**

21    Bankruptcy Code § 303(e) provides for posting of a bond to indemnify the

22   debtor for amounts that might be later awarded under § 303(i) which, as discussed

23   above, provides for costs or attorney's fees in the event of an inappropriate filing

24   coupled with actual and/or punitive damages in the event of a bad faith filing.

25    MAM has demonstrated that it is qualified to file the Involuntary Petition, that

26   its claim is unsecured in an amount greater than $13,475, not contingent as to liability

27   nor genuinely the subject of a bona fine dispute nor is there evidence of bad faith in its

28

MAM Wealth Management Real Estate Fund
1, LP's Opposition to Motion to Dismiss
Involuntary Petition

DANA M. DOUGLAS
Attorney at Law

1   filing. Accordingly, there is no reason to award costs, attorney's fees or damages and,

2   therefore, no necessity of posting a bond of any size.

3   **VI.   CONCLUSION**

4       MAM appropriately filed the Involuntary Petition as to 57 LLC because it was one

5   of less than 12 creditors and has a claim that is not contingent as to liability as  it is

6   secured by a recorded deed of trust, nor the subject of a bona fide dispute as to liability

7   for the claim or its amount, and it is unsecured in an amount greater than $13,745.

8   The Involuntary Petition was filed to preserve the assets of 57 LLC and reorganize the

9   debts for the benefit of all creditors which is not an improper purpose.  The Involuntary

10  Petition should not be dismissed and should be allowed to proceed.

11      MAM respectfully requests, in view of these conclusions, that the Court deny the

12  Motion, allow the Involuntary Petition to proceed, and make no award of costs,

13  attorney's fees, actual or punitive damages nor require MAM to post a bond of any size.

14

15  Dated: March 9, 2010

16

17                              _Dana M Douglas_
                                Dana M. Douglas
18                              Attorney at Law
                                Counsel for MAM Wealth Management
19                              Real Estate Fund 1, LP

20

21

22

23

24

25

26

27

28

DANA M. DOUGLAS
Attorney at Law

14          MAM Wealth Management Real Estate Fund
            1, LP's Opposition to Motion to Dismiss
            Involuntary Petition

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

DANA M. DOUGLAS
Attorney at Law

## DECLARATION OF RAFAEL SANCHEZ

MAM Wealth Management Real Estate Fund
1, LP's Opposition to Motion to Dismiss
Involuntary Petition

### DECLARATION OF RAFAEL SANCHEZ

I, Rafael Sanchez, declare:

1.    I am a resident of Los Angeles county and am over 18 years of age;

2.    I am an officer of MAM Wealth Management, LLC, the general partner of MAM Wealth Management Real Estate Fund 1, LP ("MAM"), a party to the within action;

3.    I have personal knowledge of the facts related below and, if called upon to do so, could and would testify competently thereto;

4.    57 Market Street, LLC, a limited liability company ("57 LLC") was formed to participate in the purchase, renovation and improvement of 57 Market Street, a commercial property in the Venice-Abbot Kinney area of Venice, California ("57 Market Street");

5.    MAM's participation in 57 LLC is the result of a loan to Thomas Sharp Creed and Shari Creed of $470,000 for the down payment on 57 Market Street. The loan was funded with the contributions (primarily retirement funds) of a number of parties whose interests MAM represents in this transaction and secured by a trust deed that is recorded in Los Angeles County. The original managing member(s) of the LLC were Thomas Sharp Creed and/or Shari Creed.

6.    In early 2009 disputes developed among the members of 57 LLC as to how the entity was to be managed. In particular, the managing members were not:

    a.  Cooperating with the architect who was to prepare the plans for the addition of a second story to 57 Market Street, nor, therefore, proceeding with construction of the addition;

    b.  Paying the obligations of the LLC as they came due;

    c.  Informing the other members as to the operations and activities of the LLC;

    d.  Collecting the rent from Shari Creed Strategic Imaging, LLC, the occupant of 57 Market Street, or removing the occupant so that 57 Market Street

DANA M. DOUGLAS
Attorney at Law

MAM Wealth Management Real Estate Fund 1, LP's Opposition to Motion to Dismiss Involuntary Petition

1    could be rented to a paying occupant. (The failure to collect rent caused

2    the economic problems 57 LLC has experienced in the last year.)

3    Conversely, rather than building the second story addition it is believed the Creeds

4    made excessive renovations to the space occupied by Shari Creed Strategic Imaging,

5    LLC, in essence, "pimping out" their offices with the funds earmarked for plans,

6    drawings and preliminaries to construction of the second story, and allowing Shari

7    Creed Strategic Imaging, LLC, to continue to occupy 57 Market Street either at no cost

8    or paying an unknown sum that was not being disclosed to the other members of 57

9    LLC.

10    7.    Separate from the various disputes among the parties as to the

11    management of 57 LLC, MAM's loan was not being repaid and a notice of default was

12    recorded in August, 2009.   MAM has not proceeded to a trustee's sale of 57 Market

13    Street.

14    8.    Throughout 2009 we attempted to resolve the disputes or reach an

15    agreement as to the management of 57 LLC. At one point in November, 2009, it was

16    believed the Creeds would leave 57 LLC but that did not occur.

17    9.    In December, 2009, two steps were taken to try to resolve the management

18    and economic problems of 57 LLC:

19    a. Alex Martinez sent notice of an emergency meeting to the managing

20    members of the LLC. The Creeds and Mr. Foreht acknowledged the

21    meeting but did not attend.  At the meeting there was a vote to change

22    the management of 57 LLC and, immediately thereafter, Mr. Martinez

23    caused 57 LLC to file a voluntary petition in Chapter 11 bankruptcy;

24    b. A complaint was filed in the state court alleging, among other things,

25    that the managing members of 57 LLC had breached the operating

26    agreement.

27

28

MAM Wealth Management Real Estate Fund
1, LP's Opposition to Motion to Dismiss
Involuntary Petition

10.    The Creeds filed a motion to dismiss the voluntary Chapter 11 case that was granted because, despite a good faith belief that the proper procedures had been followed, it was determined that Alex Martinez did not have the authority to assume management of 57 LLC and could not, therefore, file the bankruptcy.

11.    After the voluntary Chapter 11 bankruptcy was dismissed, the complaint in the state court action was amended to include additional claims regarding the management of 57 LLC and a request for injunctive relief as to the management of 57 LLC. The injunctive relief was not granted on an ex parte basis (it likely will be re-presented to the court if another resolution of the management issues cannot be achieved), and the matter remains active in the state court.

12.    In the absence of a change in management of 57 LLC, either in the parties with management authority or in the manner in which 57 LLC was managed so that its debts were paid as they came due, the primary asset of the LLC, 57 Market Street, continued to be at risk of a trustee's sale by Bay Area Financial Corp. which had recorded its notice of default and of a trustee's sale which was scheduled for February 1, 2010, to the detriment of the investors whose (primarily) retirement funds were the source of the MAM's loan to the Creeds and 57 LLC.

13.    The Creeds' continued failure to manage 57 LLC in a manner that collected the rent owed to it and paid its debts as they came due was coupled with a failure or refusal to resolve or even address Bay Area Financial Corp.'s claim. In order, therefore, to preserve the primary asset of 57 LLC and attempt to reorganize its debts so that creditors could be paid and investors might realize their interests in 57 LLC, an involuntary petition in Chapter 11 bankruptcy was filed on February 1, 2010.

14.    Prior to filing the involuntary petition MAM reviewed the information to which it had access as to the number of creditors of 57 LLC and the amounts owed to them and sought a current value of 57 Market Street. MAM determined that:

    a.    There were five creditors of 57 LLC;

MAM Wealth Management Real Estate Fund
1, LP's Opposition to Motion to Dismiss
Involuntary Petition

DANA M. DOUGLAS
Attorney at Law

15.    As to the issue of the number of creditors and amounts owed to them, an affiliate of MAM, WePhix Business Management Technologies, Inc., in accord with the requirements of the Operating Agreement for 57 LLC, performed bookkeeping services and tracked 57 LLC's financial activities until the Creeds terminated WePhix services. In determining the number of creditors of 57 LLC, WePhix provided a list of creditors. The list contained the following names and balances owed:

| | |
|---|---|
| Bay Area Financial Corp. | $  234,113 |
| Chase (formerly Washington Mutual) | $1,856,083 |
| MAM | $  470,650 |
| Ian Mitchell | $  125,020 |
| WePhix | $      5,540 |
| WePhix/MAM for advanced expenses | $    15,456 |

16.    As to the value of 57 Market Street, we consulted with realtors in the area and ordered an appraisal of the property which was performed by Vicky Joy, a California Real Estate Appraiser. We were given a preliminary quote, followed by a written report, indicating the value of 57 Market Street as $1,875,000.

17.    Based upon the information as to the number of creditors, the value of the secured claims and the value of the property, it was concluded that MAM would be qualified to file an involuntary petition in Chapter 11 bankruptcy as to 57 LLC and the petition was filed.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct this 9th day of March, 2010, in Sherman Oaks, California.

Rafael Sanchez

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DANA M. DOUGLAS
Attorney at Law

**DECLARATION OF GILMA KOCH**

MAM Wealth Management Real Estate Fund
1, LP's Opposition to Motion to Dismiss
Involuntary Petition

## DECLARATION OF GILMA KOCH

1. I, Gilma Koch, am an employee of WePhix Business Management Technologies, Inc. ("WePhix"). Neither I nor WePhix are parties to the matter herein.

2. I am over the age of 18 and I have personal knowledge of the facts stated below through the books and records of WePhix.

3. WePhix has provided bookkeeping and accounting service for 57 Market Street LLC ("57 LLC") and was recently asked to prepare a list of creditors of 57 LLC.

4. The following is a list of the names of creditors of 57 LLC along with the last known balances of moneys owed to the creditors by 57 LLC:

|  |  |  |
|---|---|---|
| a. | Bay Area Financial Corp. | $ 234,113 |
| b. | Chase (formerly Washington Mutual) | $1,856,083 |
| c. | MAM | $ 470,650 |
| d. | Ian Mitchell | $ 125,020 |
| e. | WePhix | $ 5,540 |
| f. | WePhix/MAM for advanced fees | $ 15,456 |

5. Because a number of the statements in our possession for the above-referenced creditors are a number of months old, I assume the amounts owed are now greater than the information in our records.

Declared under penalty of perjury under the laws of the State of California this 9th day of March, 2010, in Sherman Oaks, California.

_Gilma Koch_
Gilma Koch

DANA M. DOUGLAS
Attorney at Law

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**EXHIBIT A**
**February 2, 2010 Letter to Leslie Cohen**

MAM Wealth Management Real Estate Fund
1, LP's Opposition to Motion to Dismiss
Involuntary Petition

DANA M. DOUGLAS
Attorney at Law

**DANA M. DOUGLAS**
**Attorney at Law**
**16235 Devonshire Street, Number 19**
**Granada Hills, California  91344**
**818-360-8295 office**
**818-360-9852 fax**
*danadouglaslaw@aol.com*

February 2, 2010

Leslie A. Cohen, Esquire
Leslie Cohen Law, P.C.
506 Santa Monica Boulevard, Suite 200
Santa Monica, California  90401

re:    57 Market Street LLC

Dear Ms. Cohen:

Enclosed is a courtesy copy of the Summons and the Involuntary Petition in Chapter 11 and related Statements filed in regard to your client on Monday, February 1st.

We believe that the involuntary action is appropriate as filed based upon our knowledge of the number of creditors and the value of the real estate.  In an effort to avoid unnecessary fees and expense, however, I am writing to confirm there are not more and larger debts that would necessitate the inclusion of additional petitioning creditors – please let me know if this is the case.

I do not imagine that your client(s) will assert that the MAM Wealth Real Estate Fund I, L.P. claim is either contingent or the subject of a bona fide dispute. If such an assertion will be made, I would appreciate knowing so in order that we may evaluate whatever information you might provide with a view to, again, limiting fees and/or unnecessary expense.

Thank you for your anticipated courtesies in this matter.

Very truly yours,

*Dana M. Douglas*

Enclosure

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**EXHIBIT B**
**#10 D Attachment Motion for Relief for Automatic Stay of**
**Bay Area Financial Corp.**

MAM Wealth Management Real Estate Fund
1, LP's Opposition to Motion to Dismiss
Involuntary Petition

DANA M. DOUGLAS
Attorney at Law

## #10 D ATTACHMENT TO MOTION FOR RELIEF FOR AUTOMATIC STAY

#10 D other (specify): Value is estimated based on the estimated finished value of the construction project when this loan was made ($2,800,000.00) that was reduced by a broker's price opinion of $2,400,000.00 from about six months prior to the petition date, and Creditor's estimates the softening commercial market has decreased the value to $2,200,000.00.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**EXHIBIT C**
**Appraisal of 57 Market Street**

MAM Wealth Management Real Estate Fund
1, LP's Opposition to Motion to Dismiss
Involuntary Petition

DANA M. DOUGLAS
Attorney at Law

File No. 020510

APPRAISAL OF



LOCATED AT:

57 Market Street
Venice/LA, CA 90291

FOR:

57 Market Street LLC
57 Market Street, Venice CA 90291
Venice, CA  90291

BORROWER:

N/A

AS OF:

February 9, 2010

BY:

Vickie Joy, CREA

## Exterior-Only Inspection Residential Appraisal Report

File No. 020510

The purpose of this summary appraisal report is to provide the lender/client with an accurate, and adequately supported, opinion of the market value of the subject property.

| Property Address | 57 Market Street | City | Venice/LA | State | CA | Zip Code | 90291 |

| Borrower | N/A | Owner of Public Record | 57 Market Street LLC | County | Los Angeles |

Legal Description Lot: 12 Block: A Tract: Venice of America

| Assessor's Parcel # | 4226-007-009 | Tax Year | 2009 | R.E. Taxes $ | 32,316.53 |

| Neighborhood Name | Venice area of Los Angeles | Map Reference | 671 G6 | Census Tract | 2735.00 |

| Occupant | [X] Owner | [ ] Tenant | [ ] Vacant | Special Assessments $ None | [ ] PUD | HOA $ N/A | [ ] per year | [ ] per month |

| Property Rights Appraised | [X] Fee Simple | [ ] Leasehold | [ ] Other (describe) |

| Assignment Type | [ ] Purchase Transaction | [ ] Refinance Transaction | [X] Other (describe) Estimate Market Value |

| Lender/Client 57 Market Street LLC | Address 57 Market Street, Venice CA 90291 |

Is the subject property currently offered for sale or has it been offered for sale in the twelve months prior to the effective date of this appraisal?   [ ] Yes [X] No

Report data source(s) used, offering price(s), and date(s).   MLS/FARES (Public Records)/Owner.

I [ ] did [ ] did not analyze the contract for sale for the subject purchase transaction. Explain the results of the analysis of the contract for sale or why the analysis was not performed.
N/A

| Contract Price $ Market Value | Date of Contract N/A | Is the property seller the owner of public record? | [ ] Yes | [ ] No | Data Source(s) N/A |

Is there any financial assistance (loan charges, sale concessions, gift or downpayment assistance, etc.) to be paid by any party on behalf of the borrower?   [ ] Yes [X] No

If Yes, report the total dollar amount and describe the items to be paid.   None known

Note: Race and the racial composition of the neighborhood are not appraisal factors.

| Neighborhood Characteristics | | One-Unit Housing Trends | | | One-Unit Housing | | Present Land Use % | |
|---|---|---|---|---|---|---|---|---|
| Location | [ ] Urban [X] Suburban [ ] Rural | Property Values | [ ] Increasing [ ] Stable [X] Declining | | PRICE | AGE | One-Unit | 65 % |
| Built-Up | [X] Over 75% [ ] 25-75% [ ] Under 25% | Demand/Supply | [ ] Shortage [X] In Balance [ ] Over Supply | | $(000) | (yrs) | 2-4 Unit | 10 % |
| Growth | [ ] Rapid [X] Stable [ ] Slow | Marketing Time | [X] Under 3 mths [ ] 3-6 mths [ ] Over 6 mths | | 465 Low | New | Multi-Family | 10 % |
| Neighborhood Boundaries Roughly: Rose Avenue (North), Washington Blvd. (South), Lincoln Blvd. | | | | | 5,600 High | 95 | Commercial | 15 % |
| (East), and the Pacific Ocean (West). | | | | | 1,100 Pred. | 65 | Other | % |

Neighborhood Description  Mixed residential district located close to local and regional supporting centers. Reasonable distance to all
supporting facilities. The subject appraised value is higher than the predominant value for the area due mainly to its zoning, beach
proximity, GLA size, condition and artist-in- residence use.

Market Conditions (including support for the above conclusions)  Refer to addendum.

| Dimensions Refer to plat map | Area 2700 SF | Shape Rectangular | View None |

| Specific Zoning Classification LACM | Zoning Description Limited Commercial and Residential uses |

| Zoning Compliance | [ ] Legal [X] Legal Nonconforming (Grandfathered Use) | [ ] No Zoning | [ ] Illegal (describe) No Covered Parking |

Is the highest and best use of the subject property as improved (or as proposed per plans and specifications) the present use?   [X] Yes [ ] No   If No, describe.

| Utilities | Public | Other (describe) | | Public | Other (describe) | Off-site Improvements—Type | Public | Private |
|---|---|---|---|---|---|---|---|---|
| Electricity | [X] | | Water | [X] | | Street Asphalt | [X] | [ ] |
| Gas | [X] | | Sanitary Sewer | [X] | | Alley Yes | [X] | [ ] |

| FEMA Special Flood Hazard Area | [ ] Yes [X] No | FEMA Flood Zone X | FEMA Map # 0601371751F | FEMA Map Date 9/26/2008 |

Are the utilities and off-site improvements typical for the market area?   [X] Yes [ ] No   If No, describe.

Are there any adverse site conditions or external factors (easements, encroachments, environmental conditions, land uses, etc.)?   [ ] Yes [X] No   If Yes, describe.  No apparent
adverse easements or other conditions were noted. Site utility is typical for the area.  No significant external inadequacies were noted.
Title report was not reviewed nor provided. Appraiser not appraised of any extraordinary assumptions.

| Source(s) Used for Physical Characteristics of Property | [X] Appraisal Files [X] MLS | [X] Assessment and Tax Records | [ ] Prior Inspection | [X] Property Owner |
| [ ] Other (describe) | Data Source(s) for Gross Living Area Public Records |

| GENERAL DESCRIPTION | | GENERAL DESCRIPTION | | Heating / Cooling | | Amenities | | Car Storage | |
|---|---|---|---|---|---|---|---|---|---|
| Units | [X] One [ ] One with Accessory Unit | Concrete Slab | [X] Crawl Space | [X] FWA [ ] HWBB | Fireplace(s) # | | [X] None | |
| # of Stories One | | Full Basement | [ ] Finished | [ ] Radiant | WoodStove(s) # | | [ ] Driveway # of Cars | |
| Type | [ ] Det. [X] Att. [ ] S-Det./End Unit | Partial Basement | [ ] Finished | [ ] Other | [X] Patio/Deck Patio | | Driveway Surface | |
| [X] Existing [ ] Proposed [ ] Under Const. | Exterior Walls Cncrt/Brick/Gd | Fuel Gas | | Porch | | [ ] Garage # of Cars | |
| Design (Style) Conventional | Roof Surface Comp/Gd | [X] Central Air Conditioning | | Pool | | [ ] Carport # of Cars | |
| Year Built 1922 | Gutters & Downspouts None | [ ] Individual | | Fence | | [ ] Attached [ ] Detached | |
| Effective Age (Yrs) 15 | Window Type Various/Gd | [ ] Other | | Other (describe) | | [ ] Built-in | |
| Appliances | [ ] Refrigerator [X] Range/Oven [X] Dishwasher [X] Disposal [ ] Microwave [ ] Washer/Dryer | Other (describe) | | | | | | | |

| Finished area above grade contains: | 3 Rooms | 0 Bedrooms | 1.5 Bath(s) | 2,400 Square Feet of Gross Living Area Above Grade |

Additional features (special energy efficient items, etc.)   Refer to addendum.

Describe the condition of the property and data source(s) (including apparent needed repairs, deterioration, renovations, remodeling, etc.).   The subject appears to be in
generally sound state. No significant physical or functional inadequacies were noted. Average floor plan and utility. No significant
needed repairs were indicated. Overall condition rating is Good. Refer to addendum.

Are there any apparent physical deficiencies or adverse conditions that affect the livability, soundness, or structural integrity of the property?   [ ] Yes [X] No   If Yes, describe.

Does the property generally conform to the neighborhood (functional utility, style, condition, use, construction, etc.)?   [X] Yes [ ] No   If No, describe.

## Exterior-Only Inspection Residential Appraisal Report    File No. 020510

There are 3 +/- comparable properties currently offered for sale in the subject neighborhood ranging in price from $ 2,695,000 to $ 3,900,000.

There are 6 +/- comparable sales in the subject neighborhood within the past twelve months ranging in price from $ 1,575,000 to $ 5,600,000.

| FEATURE | SUBJECT | COMPARABLE SALE NO. 1 | | COMPARABLE SALE NO. 2 | | COMPARABLE SALE NO. 3 | |
|---|---|---|---|---|---|---|---|
| Address | 57 Market Street Venice/LA | 17 23rd Avenue Venice/LA, CA 90291 | | 1015 Abbot Kinney Blvd. Venice/LA, CA 90291 | | 29 29th Avenue Venice/LA, CA 90291 | |
| Proximity to Subject | | 0.36 miles SSE | | 0.29 miles NNE | | 0.63 miles SE | |
| Sale Price | $ Market Value | | $ 2,200,000 | | $ 4,455,000 | | $ 1,510,000 |
| Sale Price/Gross Liv. Area | $ 0.00 sq.ft. | $ 711.51 sq.ft. | | $ 891.00 sq.ft. | | $ 766.11 sq.ft. | |
| Data Source(s) | | MLS/FARES/TITLE/AGENT | | MLS/FARES/TITLE/AGENT | | MLS/FARES/TITLE/AGENT | |
| Verification Source(s) | | APN: 4226-015-008 | | APN: 4286-012-001 | | APN: 4226-021-021 | |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment |
| Sale or Financing Concessions | | Doc#1803804 1.6 Mil. 1st TD | | Doc#1682388 Terms Unk. | | Doc#1157549 1.1 Mil. 1st TD | |
| Date of Sale/Time | N/A | 12/01/09 (-4%) | -88,000 | 11/09/09 (-3.5%) | -156,000 | 07/29/09 (-8%) | -121,000 |
| Location | Good | Good | | Good | | Good | |
| Leasehold/Fee Simple | Fee Simple | Fee Simple | | Fee Simple | | Fee Simple | |
| Site | 2700 SF | 2640 SF | | 4660 SF | -147,000 | 2640 SF | |
| View | None | Partial Ocn/Sup | -100,000 | City/Sl.Sup | -25,000 | Prtl. Ocn/Sl.Sup | -50,000 |
| Design (Style) | Conventional | Conventional | | Conventional | | Conventional | |
| Quality of Construction | Good | Good | | Excellent | -200,000 | Good | |
| Actual Age | 88 yrs./ Remod | 100yrs. / Remod | | 3 yrs. | | 59 yrs. / Remod | |
| Condition | Good | Very Good | -100,000 | Excellent | -200,000 | Good | |
| Above Grade | Total 3 / Bdrms 0 / Baths 1.5 | Total 6 / Bdrms 4 / Baths 4.5 | -30,000 | Total 4 / Bdrms 1 / Baths 3.5 | -20,000 | Total 5 / Bdrms 3 / Baths 2.5 | -10,000 |
| Room Count | | | | | | | |
| Gross Living Area | 4,000 sq.ft. | 3,092 sq.ft. | 159,000 | 5,000 sq.ft. | -175,000 | 1,971 sq.ft. | 355,000 |
| Basement & Finished Rooms Below Grade | Original LP- N/A ContractDate-N/A | $2,250,000 10/12/09 | | $4,950,000 10/12/09 | | $1,799,000 06/13/09 | |
| Functional Utility | Average | Guest Unit | -50,000 | Studio Unit | -25,000 | Average | |
| Heating/Cooling | Fau/Cac | Fau/Cac | | Fau/Cac | | Fau/None | 5,000 |
| Energy Efficient Items | Typical | Typical | | Typical | | Typical | |
| Garage/Carport | None | 3 Garage | -30,000 | 3 Garage | -30,000 | 2 Garage | -10,000 |
| Porch/Patio/Deck | Patio | Similar | | Similar | | Similar | |
| Zoning | CM | RD1.5 | 150,000 | C2 | | RD1.5 | 150,000 |
| Days on Market | >>> | 95 | | 19 | | 79 | |
| Net Adjustment (Total) | | [ ] + [X] - | $ 89,000 | [ ] + [X] - | $ 978,000 | [X] + [ ] - | $ 319,000 |
| Adjusted Sale Price of Comparables | | Net Adj. -4.0% Gross Adj. 32.1% | $ 2,111,000 | Net Adj. -22.0% Gross Adj. 22.0% | $ 3,477,000 | Net Adj. 21.1% Gross Adj. 46.4% | $ 1,829,000 |

I [X] did [ ] did not research the sale or transfer history of the subject property and comparable sales. If not, explain

My research [X] did [ ] did not reveal any prior sales or transfers of the subject property for the three years prior to the effective date of this appraisal.

Data source(s) FARES/MLS. Note: Subject prior sale was stated if sold within 3 years of effective date of appraisal.

My research [ ] did [X] did not reveal any prior sales or transfers of the comparable sales for the year prior to the date of sale of the comparable sales.

Data source(s) FARES/MLS. Note: Comps prior sales were stated if sold within 1 year of effective date of the appraisal.

Report the results of the research and analysis of the prior sale or transfer history of the subject property and comparable sales (report additional prior sales on page 3).

| ITEM | SUBJECT | COMPARABLE SALE NO. 1 | COMPARABLE SALE NO. 2 | COMPARABLE SALE NO. 3 |
|---|---|---|---|---|
| Date of Prior Sale/Transfer | 1/11/2008 | No prior sales | No prior sales | No prior sales |
| Price of Prior Sale/Transfer | $2,580,000 | within 12 months | Within 12 Months | within 12 months |
| Data Source(s) | Public Records/Owner | MLS/Public Records | MLS/Public Records | MLS/Public Records |
| Effective Date of Data Source(s) | Appraisal Effective Date | Appraisal Effective Date | Appraisal Effective Date | Appraisal Effective Date |

Analysis of prior sale or transfer history of the subject property and comparable sales    Any prior (full value) transfers denoted of the subject and comparable's are within three years for the subject and one year for the comparable's as of the effective date of this appraisal. Refer to addendum regarding subject's prior sale.

After necessary adjustments for differences, some of the comparables experienced line adjustments over 10% and/or net/gross adjustments that exceeded the typically desired 15% net and 25% gross guidelines.

Summary of Sales Comparison Approach.  Comp 2 is somewhat larger than the subject property and in overall superior condition, have been designed by noted architect Mark Mack. Comp 2 was utilized as a comparable in this report due mainly to its recent sale date and similar zoning. Comp 3 appears to have sold at the lower end of the market as it was brought by a motivated sale. Refer to addendum.

Indicated Value by Sales Comparison Approach $ 1,875,000

Indicated Value by: Sales Comparison Approach $$1,875,000    Cost Approach (if developed) $    0    Income Approach (if developed) $ N/A

The direct sales comparison approach is considered the most reliable indicator of value. Values have been rounded to the nearest $1,000. Refer to addendum.

This appraisal is made [X] "as is," [ ] subject to completion per plans and specifications on the basis of a hypothetical condition that the improvements have been completed, [ ] subject to the following repairs or alterations on the basis of a hypothetical condition that the repairs or alterations have been completed, or [ ] subject to the following required inspection based on the extraordinary assumption that the condition or deficiency does not require alteration or repair:

Based on a visual inspection of the exterior areas of the subject property from at least the street, defined scope of work, statement of assumptions and limiting conditions, and appraiser's certification, my (our) opinion of the market value, as defined, of the real property that is the subject of this report is $ 1,875,000 as of 02/09/2010, which is the date of inspection and the effective date of this appraisal.

Freddie Mac Form 2055 March 2005          Produced using ACI software, 800.234.8727 www.aciweb.com          Page 2 of 6          Fannie Mae Form 2055 March 2005

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

DANA M. DOUGLAS
Attorney at Law

**EXHIBIT D**
**MAM Wealth Management Real Estate Fund 1, L.P.**
**Notice of Default**

MAM Wealth Management Real Estate Fund
1, LP's Opposition to Motion to Dismiss
Involuntary Petition

Trustee's Sale No. 20099053361046          Type of Mailing: 10 Day

57 MARKET STREET, LLC
15456 VENTURA BLVD., #302
SHERMAN OAKS, CA 91403

# IMPORTANT INFORMATION IS CONTAINED WITHIN THE ATTACHED NOTICE.

## PLEASE READ CAREFULLY

Title Trust Deed Service Company IS A DEBT COLLECTOR ATTEMPTING TO COLLECT A DEBT. ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.

CERTIFIED A TRUE COPY OF THE ORIGINAL
DOCUMENT RECORDED  8/14/2009
AS INSTRUMENT NO. 2009-1252430
IN BOOK        PAGE
OFFICIAL RECORDS OF  LOS ANGELES
FIRST AMERICAN TITLE COMPANY
BY

**RECORDING REQUESTED BY:**
Title Trust Deed Service Company
WHEN RECORDED MAIL TO:
Title Trust Deed Service Company
26679 W. Agoura Road Suite 225
Calabasas, CA 91302
818-871-1900

SPACE ABOVE THIS LINE FOR RECORDER'S USE

TTD No.: 20099053361046                    Title Order No.:  4231114
Loan No.: CREED

## NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST
### IMPORTANT NOTICE

**IF YOUR PROPERTY IS IN FORECLOSURE BECAUSE YOU ARE BEHIND IN YOUR
PAYMENTS IT MAY BE SOLD WITHOUT ANY COURT ACTION,** and you may
have the legal right to bring your account in good standing by paying all of your past due payments plus
permitted costs and expenses within the time permitted by law for reinstatement of your account, which is
normally five business days prior to the date set for the sale of your property. No sale date may be set until
three months from the date this notice of default may be recorded (which date of recordation appears on this
notice).

This amount is **$24,055.63** as of 08-13-2009, and will increase until your account becomes current. While
your property is in foreclosure, you still must pay other obligations (such as insurance and taxes) required by
your note and deed of trust or mortgage. If you fail to make future payments on the loan, pay taxes on the
property, provide insurance on the property, or pay other obligations as required in the note and deed of trust
or mortgage, the beneficiary or mortgagee may insist that you do so in order to reinstate your account in good
standing. In addition, the beneficiary or mortgagee may require as a condition of reinstatement that you
provide reliable written evidence that you paid all senior liens, property taxes, and hazard insurance premiums.

Upon your written request, the beneficiary or mortgagee will give you a written itemization of the entire
amount you must pay. You may not have to pay the entire unpaid portion of your account, even though full
payment was demanded, but you must pay all amounts in default at the time payment is made. However, you
and your beneficiary or mortgagee may mutually agree in writing prior to the time the notice of sale is posted
(which may not be earlier than the three month period stated above) to, among other things, (1) provide
additional time in which to cure the default by transfer of the property or otherwise; or (2) establish a schedule
of payments in order to cure your default; or both (1) and (2).

Following the expiration of the time period referred to the first paragraph of this notice, unless the
obligation being foreclosed upon or a separate written agreement between you and your creditor permits a
longer period, you have only the legal right to stop the sale of your property by paying the entire amount
demanded by your creditor.

To find out the amount you must pay, or to arrange for payment to stop the foreclosure, or if your
property is in foreclosure for any other reason, contact:
MAM WEALTH MANAGEMENT REAL ESTATE FUND I L.P.
C/O Title Trust Deed Service Company
ATTN: FORECLOSURE DEPT.
26679 W. Agoura Road Suite 225
Calabasas CA 91302
Phone: 818-871-1900

Page 1 of 3

CA-NOD-117:

TTD NO.: 20099053361046
LOAN NO.: CREED

## NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST

If you have any questions, you should contact a lawyer or the governmental agency which may have insured your loan.

Notwithstanding the fact that your property is in foreclosure, you may offer your property for sale provided the sale is concluded prior to the conclusion of the foreclosure.

Remember, YOU MAY LOSE LEGAL RIGHTS IF YOU DO NOT TAKE PROMPT ACTION.

NOTICE IS HEREBY GIVEN: That **TITLE TRUST DEED SERVICE COMPANY** As Agent for the current Beneficiary under a Deed of Trust dated **01-09-2008**, executed by **SHARI H. CREED AND THOMAS S. CREED, HUSBAND AND WIFE** as Trustor, to secure certain obligations in favor of **MAM WEALTH MANAGEMENT REAL ESTATE FUND I, L.P., A DELAWARE LIMITED PARTNERSHIP**

as beneficiary, recorded 07-23-2009 , as Instrument No. 20091115823, in Book /// Page ///, of Official Records in the Office of the Recorder of LOS ANGELES County, CALIFORNIA describing land therein as:

## AS MORE FULLY DESCRIBED IN SAID DEED OF TRUST

said obligations including ONE NOTE FOR THE ORIGINAL SUM OF **$570,650.00**

That a breach of, and default in, the obligations for which such Deed of Trust is security has occurred in that payment has not been made of:

The installment of Interest which became due 4/1/2009 together with all subsequent installments of interest, together with late fees, delinquent taxes, and foreclosure fees and expenses. Any advances which may hereafter be made. All obligations and indebtedness as they become due and charges pursuant to said Note and Deed of Trust.

That by reason thereof, the present beneficiary under such deed of trust, has executed and delivered to said agent, a written Declaration of Default and Demand for same, and has deposited with said agent, such deed of trust and all documents evidencing obligations secured thereby, and has declared and does hereby declare all sums secured thereby immediately due and payable and has elected and does hereby elect to cause the trust property to be sold to satisfy the obligations secured thereby.

Dated: August 13, 2009

TITLE TRUST DEED SERVICE COMPANY, By
First American Title Insurance Company, as Agent

By: _____
armando Gil, authorized agent

We are assisting the Beneficiary to collect a debt and any information we obtain will be used for that purpose whether received orally or in writing.

This loan is exempt from the provisions of California Civil Code Section 2923.5 because it is Commercial Property.

Page 2 of 3

CA-NOD-1157

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

DANA M. DOUGLAS
Attorney at Law

**EXHIBIT E**
**March 2, 2010 Letter to Leslie Cohen**

MAM Wealth Management Real Estate Fund
1, LP's Opposition to Motion to Dismiss
Involuntary Petition

**DANA M. DOUGLAS**
**Attorney at Law**
**16235 Devonshire Street, Number 19**
**Granada Hills, California 91344**
**818-360-8295 office**
**818-360-9852 fax**
*danadouglaslaw@aol.com*

March 2, 2010

*(via email only)*

Leslie A. Cohen, Esquire
Leslie Cohen Law, P.C.
506 Santa Monica Boulevard, Suite 200
Santa Monica, California 90401

re:    57 Market Street LLC

Dear Ms. Cohen:

This letter is an effort to initiate dialog with a view to the parties' mediation of their disputes as instructed by Judge Mund at the February 23rd status conference. I believe you will agree that in addition to her verbal admonition to mediate, Judge Mund's memorandum of opinion clearly signals that neither party is likely to be fully satisfied with any determination she will make.

In accord, therefore, with Judge Mund's instructions, the MAM Wealth parties hereby offer to mediate all claims as represented by the Involuntary Chapter 11 Petition, the dismissed Chapter 11 Petition, and the state court action with a mediator of your clients' choice. Moreover, we have checked our calendars and can make ourselves available on any date between now and the hearing on your clients' Motion to Dismiss the Involuntary Chapter 11 Petition (i.e., March 23rd) except the mornings of March 16 and 17.

Please let us know your response at your earliest opportunity so that we may prepare for a meaningful mediation.

Thank you for your anticipated courtesies in this matter.

Very truly yours,

*Dana M. Douglas*

## PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: 16235 Devonshire St., No. 19, Granada Hills, CA 91344.

The foregoing document described as **MAM WEALTH MANAGEMENT REAL ESTATE FUND 1, LP's OPPOSITION TO MOTION TO DISMISS INVOLUNTARY PETITION PURSUANT TO 11 U.S.C. § 303 AND REQUEST FOR COSTS, ATTORNEY'S FEES, AND COMPENSATORY DAMAGES** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

**I. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On **3/9/10** I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

- Margaux Ross – margaux.ross@usdoj.gov

- Leslie Cohen – leslie@lesliecohenlaw.com

- United States Trustee (SV) – ustpregion16.wh.ecf@usdoj.gov

☐ Service information continued on attached page

**II. SERVED BY U.S. MAIL OR OVERNIGHT MAIL** (indicate method for each person or entity served): On **3/9/10** I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. *Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.*

**Hon. Geraldine Mund**
United States Bankruptcy Court - Central District of California
21041 Burbank Boulevard, Suite 342
Woodland Hills, CA 91367

☒ Service information continued on attached page

**III. SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **3/9/10** I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. *Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.*

1

2  I declare under penalty of perjury under the laws of the United States of America that
   the foregoing is true and correct.

3
   <u>3/9/10</u>   <u>Dana M. Douglas</u>                      *Dana M. Douglas*
4  *Date*       *Type Name*                          *Signature*

5

6  Bay Area Financial Corp.
   12400 Wilshire Blvd., Ste. 230
7  Los Angeles, CA 90025-1055

   Chase Mortgage
8  P.O. Box 78148
   Phoenix, AZ 85062-8148
9
   Foreht Associates LLP
10 228 E. 45th St., 17th Floor
   New York, NY 10017
11
   MAM Wealth Management, LLC
12 15456 Ventura Blvd., Ste. 302
   Sherman Oaks, CA 91403-3021
13
   Stephen Foreht
14 139 W. 82nd St.
   New York, NY 10024
15
   Thomas Sharp Creed
16 Shari Creed
   516 Beirut Ave.
17 Pacific Palisades, CA 90272

18 We Phix
   15456 Ventura Blvd., Ste. 302
19 Sherman Oaks, CA 91403-3021

20 Ian Mitchell
   3609 Seahorn Dr.
21 Malibu, CA 90265-5643

22 Rafael Sanchez
   15456 Ventura Blvd., Ste. 302
23 Sherman Oaks, CA 91403-3021

24

25

26

27

28